STATE OF NORTH CAROLINA v. HORACE THEADOR ATKINSON

No. 4

(Filed 4 December 1979)

**1. Criminal Law § 61.2— shoe print comparison—nonexpert testimony**

The trial court properly permitted a police officer, a nonexpert witness, to testify that bloody shoe prints found in a grocery store where a robbery-murder occurred were similar to impressions found on the soles of shoes belonging to defendant where the evidence tended to show that (1) the shoe prints were found at or near the crime scene, (2) the shoe prints were made at the time of the crimes, and (3) defendant was wearing the shoes in question at the time of the crimes.

**2. Homicide § 21.2— causal connection between assault and death**

The State's evidence sufficiently established a causal connection between the victim's death and an assault on the victim by defendant's companion with

---

*State v. Atkinson*

---

a baseball bat during a robbery to support defendant's conviction of first degree murder where testimony by the State Medical Examiner tended to show that the victim was unable to withstand the shock of the assault because of preexisting heart disease and that the injuries and stress from the assault contributed to and accelerated the victim's death by heart attack.

**3. Homicide § 21.2— preexisting physical condition—assault as contributing cause of death**

The consequences of an assault which is the direct cause of death of another are not excused, nor is the criminal responsibility for the death lessened, by a preexisting physical condition which made the victim unable to withstand the shock of the assault and without which preexisting condition the blow would not have been fatal.

**4. Robbery § 3— sums customarily kept by victim—irrelevancy—harmless error**

While testimony that a robbery-murder victim customarily kept large sums of money on his person was irrelevant since there was no evidence suggesting that defendant and his companion knew of this practice, the admission of such testimony over objection did not constitute prejudicial error where defendant failed to show that a different result would have ensued if the testimony had been excluded, and where similar testimony had been elicited from another witness without objection.

**5. Criminal Law § 11— failure to submit issue as to accessory after the fact**

In a prosecution for attempted armed robbery and first degree murder, the trial court did not err in failing to submit issues as to defendant's guilt of being an accessory after the fact to those crimes where defendant's own testimony showed that he aided in the actual perpetration of the robbery-murder in that his companion informed him of the planned robbery and instructed him as to what to do, and defendant complied with those instructions.

**6. Criminal Law § 138.1— more lenient sentence to codefendant**

Defendant's sentence of life imprisonment for first degree murder did not constitute cruel and unusual punishment or a denial of equal protection because his codefendant was permitted to plead guilty to second degree murder and was sentenced to a prison term of 60 to 80 years.

**7. Criminal Law § 26.5; Homicide § 31.1— felony murder—no separate punishment for felony**

A defendant who is convicted of first degree murder on the theory of felony murder cannot be subjected to additional punishment for the underlying felony as an independent criminal offense.

APPEAL by defendant from *Wood, J.,* 8 October 1978 Conflict Session, HALIFAX Superior Court.

Upon pleas of not guilty, defendant was tried upon bills of indictment proper in form which charged him with robbery with a dangerous weapon and the murder of Wilbur Faulk Williamson.

The trial was conducted in the bifurcated manner mandated by G.S. § 15A-2000 et seq. Phase one of the trial determined the guilt or innocence of defendant. Phase two of the trial was held to determine his sentence for first-degree murder following his conviction on that charge.

During the guilt determination phase of the trial, the state introduced evidence summarized in pertinent part as follows:

Prior to 14 July 1978, Wilbur Faulk Williamson owned and operated a business known as the Gold Hill Grocery. The store was located on North Carolina Highway 48 near Glenview, North Carolina, in Halifax County.

At approximately 9:30 a.m. on 14 July 1978, Williamson was found by a passerby sitting in front of his store near a ditch. Dressed in his underclothes, Williamson was bleeding profusely about his head as well as through his nose and mouth. His clothing was soaked with blood. Gurgling sounds in Williamson's throat prompted Deputy Sheriff William T. Harper to clear an air passageway in Williamson's mouth and throat. Williamson told those who had gathered about him that he had been robbed, but he was unable to supply any details of what had happened. When a unit of the Roanoke Valley Rescue Squad arrived at the store, Williamson was sitting on the ground, propped up by a 55 gallon barrel that had been found nearby. He was taken to Halifax Memorial Hospital in Roanoke Rapids where he later died.

Upon securing the area detectives from the Halifax County Sheriff's Department proceeded to conduct an investigation. From Highway 48 to the front of the store there was a trail of blood. There was a pool of blood where Williamson had been sitting propped up by the barrel. The trail of blood continued from the pool toward the store, going beside a set of gasoline pumps located in front of the store. The trail of bloodstains led into the store itself.

The glass on the storm door on the front of the building had been knocked out. Glass from the broken window littered the area in front of the store as well as an area immediately inside the front portal of the building.

The interior of the store was in disarray. There was blood on the floor inside the store. On the right just as one enters the

store there was another pool of blood. On the floor there was an oil can which had oil still running out of it. Beside the can there was a pair of wire rimmed glasses. Both the oil can and the pair of glasses were located at the base of a drink box. The cash register was on the floor behind the counter. It had not been opened. There was a baseball bat lying beside the cash register. On top of the counter there was a broken pair of sunglasses. There was a shoe track on top of the counter in blood. Throughout the store, there were bloody shoe tracks in the aisles. There was blood on various items on shelves as well as on a freezer door whose glass had been broken out. The floor of the grocery was wet from broken bottles of vinegar.

At about the same time Williamson was found in front of his store, an orange Pontiac Firebird automobile was seen in the vicinity of the Gold Hill Grocery travelling at a high rate of speed. At approximately 10:00 or 10:30 a.m. the automobile was involved in a traffic accident in Wilson, North Carolina. The car was heavily damaged on the right side near the door and the right rear fender. When he arrived on the scene Officer B. E. Edwards of the State Highway Patrol observed defendant sitting in the front passenger seat of the car. Defendant was cut on his forehead and on his hand. Defendant identified himself as the driver of the Pontiac saying that he had cut his head on the mirror and hurt his hand on the dashboard of the car. Officer Edwards asked defendant if he would like to go to the hospital for treatment of his injuries. When defendant replied affirmatively Officer Edwards directed him to go with Officer James H. Smith of the Wilson Police Department. Officer Smith then took defendant to the emergency room of Wilson Memorial Hospital where his cuts were stitched and bandaged. At the time he instructed defendant to go to the hospital with Officer Smith, Officer Edwards also asked him to go to the Wilson Police Department to fill out the accident report. Defendant agreed that he would do so.

After providing for medical attention for defendant and asking him to go to the police station, Officer Edwards remained at the scene of the accident, on North Carolina Highway 58 south of Wilson, until a wrecker arrived to remove the automobile. After the car was taken away, Officer Edwards left the scene and went to lunch, not knowing anything about the robbery of the Gold Hill Grocery or the killing of Williamson. After he ate lunch and

checked back onto the radio, he heard a highway patrol bulletin about the incident at the grocery. He then returned to the place on Highway 58 where the Firebird had been sitting. The patrolman searched the ditches along the road and in the wooded area nearby. After searching approximately fifteen to twenty minutes, he found some clothing lying near a tree and a clump of bushes. At trial Officer Edwards estimated that he found the items approximately fifteen steps from where the Pontiac had been parked. He found a pair of fatigue pants with other items of clothing stuffed into one of the pant legs, including a pair of shoes as well as a tan and mustard colored shirt. Upon touching the shirt Officer Edwards found that it bore bloodstains which were still wet. Thereupon, he left the items where they were and went to his patrol car where he called for assistance from the Halifax County Sheriff's Department. Officers from that department soon arrived on the scene and were led to the items by Officer Edwards. Photographs were taken and the items were removed.

On the evening of 14 July 1978 defendant was returned to Halifax County in the custody of Officer Warren and Sheriff William C. Bailey. Before they removed defendant from the Wilson Police Department the officers advised him of his constitutional rights. When they returned to the Halifax County Jail, the officers took defendant to Officer Warren's office for questioning where he then made a statement.

In his statement defendant stated that he and Tommy Boyd had left Maryland at approximately 2:00 a.m. on 14 July 1978 on a trip to South Carolina; that he was driving a 1972 orange Pontiac Firebird; that when the car began to run low on gasoline with them out of money they decided to find a place in the country to rob; that they stopped at a store (the Gold Hill Grocery); that they asked the man who was there to fill up their car; that Boyd had gone into the store with a baseball bat; that the man went inside also; he remained outside the store until he heard "glass breaking and things falling . . . and Tommy calling" for him; that he then ran inside the store where he saw Boyd and the man struggling; and that he ran between the two men and took the baseball bat away from them.

Defendant admitted further that he was driving the car when they left the store; that after the car was involved in an accident,

he and Boyd went into some woods where they changed their clothes; and that they left the clothes which were bloody in the woods where they changed.

During the interrogation defendant identified for the officers a number of items that had been taken from the store and recovered from the woods near where the Pontiac had been parked after the accident. As well as identifying clothing and other items belonging to Tommy Boyd defendant proceeded to identify items which belonged to him: a shirt, a pair of pants, and a pair of shoes.

The state presented expert testimony of Dr. Page Hudson, Chief Medical Examiner of the State of North Carolina. Dr. Hudson performed an autopsy on the body of Williamson and detailed the extent of the injuries he suffered in the incident at the grocery store. He testified that the autopsy revealed that Williamson suffered from a very severe hardening of the arteries, and that there was evidence which indicated that he had suffered a previous heart attack. He further testified that it was his opinion that the lacerations and contusions which he found to be present on Williamson's body could have been caused by blows of a baseball bat; and that it was his opinion that the injuries which Williamson received would have enormously stimulated the heart and his blood pressure and that Williamson's death was accelerated by this stress. On cross-examination the pathologist testified that Williamson's heart was "in terrible condition." He stated further that any severe stress could have caused Williamson's heart to stop.

At the close of the state's evidence defendant made a motion to dismiss. Upon the court's denial of that motion, defendant took the stand on his own behalf against the advice of his attorney.

Defendant testified generally consistently with the statement he had given to the officers. His testimony differed from his statement in that he testified that Boyd suggested that they rob a store but that defendant told Boyd that he "knew better, but we were both together and he knew what he could do." Defendant denied having hit Williamson with the baseball bat, insisting that he went into the store to separate Williamson and Boyd as they fought over the bat.

The jury returned a verdict finding defendant guilty of attempted armed robbery with a dangerous weapon as well as first-degree murder in the perpetration of a felony.

The court then proceeded to conduct the sentencing phase of the trial before the same jury pursuant to G.S. § 15A-2000 et seq. to determine if defendant's sentence on the murder conviction would be death or life imprisonment. The state offered as evidence additional testimony by Officer E. C. Warren, Chief Investigator for the Halifax County Sheriff's Department. Officer Warren testified only to the physical characteristics of defendant. Defendant again took the stand on his own behalf against the advice of his attorney. Defendant testified that he did not feel that he had gotten a fair trial, saying that he had tried to help Williamson, not hurt him, when he went into the store.

As to aggravating circumstances, the jury found that the murder was committed while defendant was attempting to commit a robbery that the murder was especially heinous, atrocious or cruel. The jury found only one mitigating circumstance—that defendant had no significant history of prior criminal activities. It further found that while the mitigating circumstances were insufficient to outweigh the aggravating circumstances, the latter were not sufficiently substantial to call for the imposition of the death penalty.

The jury recommended that a sentence of life imprisonment be imposed. Pursuant thereto the court entered judgment providing that defendant be imprisoned for life, that sentence to run concurrently with another life sentence which had already been imposed upon defendant upon his conviction of attempted armed robbery.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Daniel F. McLawhorn, for the State.*

*Charles D. Clark, Jr., and W. Brian Howell for defendant-appellant.*

BRITT, Justice.

[1] By his first assignment of error defendant contends that the trial court erred in admitting opinion evidence that prints from

his shoes were found in several areas of the Gold Hill Grocery for the reason that the evidence was elicited from a nonexpert witness. This assignment is without merit.

At trial, Deputy Sheriff Warren testified over objection that he observed several distinctive shoe prints in several aisles of decedent's store. State's exhibit number seven was identified by Officer Warren as a pair of shoes belonging to defendant, the shoes having been identified by defendant during his interrogation. He further testified that during the course of investigating the attempted robbery and the murder of Mr. Williamson, he observed a number of shoe prints in aisles in the store which had the impression of a "swiggly-type sole"; and that the impressions he observed in the store aisles were similar to those found on the soles of defendant's pullover shoes. At no time during his testimony was Deputy Warren qualified as an expert in the identification of shoe prints.

"Tangible traces of various sorts may indicate the presence of a person or the happening of an event of a certain character at a particular place, and evidence of them is therefore admissible if the inference sought is a reasonable one." 1 Stansbury's North Carolina Evidence § 85 at p. 263 (Brandis Rev. 1973). Evidence of shoe prints has no logical tendency to identify a defendant as the perpetrator of a crime unless a three-pronged inference is established: (1) The shoe prints were found at or near the scene of a crime; (2) the shoe prints were made at the time of the crime; and (3) the shoe prints correspond to the shoes worn by the accused at the time of the crime. *State v. Pinyatello*, 272 N.C. 312, 158 S.E. 2d 596 (1968); *State v. Palmer*, 230 N.C. 205, 52 S.E. 2d 908 (1949). It is not necessary that a witness be qualified as an expert to entitle him to testify as to the identification of shoe prints and their correspondence with the shoes worn by a defendant. *State v. Morris*, 84 N.C. 756 (1881); *State v. Reitz*, 83 N.C. 634 (1880). *See also State v. Pinyatello, supra;* 2 Jones on Evidence § 14:45 (6th ed. 1972); 1 Stansbury's North Carolina Evidence § 129 (Brandis Rev. 1973); Wharton's Criminal Evidence §§ 193, 610 (13th ed. 1972). The bare opinion of a witness as to the identity of shoe prints is incompetent as evidence. However, when a witness is able to explain the basis upon which he draws his conclusion, such an opinion is admissible and the weight that is to be

accorded to it is a matter for the jury to decide. *State v. Pinyatello, supra; State v. Palmer, supra; State v. Reitz, supra.*

As we observed above there is no requirement in our cases that a witness must be qualified as an expert before he may state an opinion as to the identification of shoe prints. It remains necessary for us to determine whether the three prerequisites of admissibility which were enunciated in *State v. Palmer, supra,* have been satisfied. We hold that they have been met satisfactorily. It is apparent that the shoe prints were found at or near the scene of the crime in that a number of witnesses, including Officer Warren, testified that there were bloody shoe prints throughout the Gold Hill Grocery. Evidence that indicates that a baseball bat covered with blood was found on the floor near the counter in the store tends to show that the tracks were made at the time of the commission of the crime. This inference is strengthened by defendant's statement to the authorities that when he ran into the store, he saw his companion, Tommy Boyd, struggling with a bleeding man. Defendant said that he saw the baseball bat between the two men. Evidence which indicates that defendant and his companion, Boyd, changed clothes and left their bloody garments in the woods near Highway 58, as well as defendant's own identification of the shoes recovered from near the highway, tends to establish that they were worn by defendant at the time of the crime.

[2] By his second assignment of error, defendant contends that the trial court erred in denying his motion for nonsuit (now denominated a motion to dismiss under G.S. § 15A-1227) for the reason that the state failed to establish a causal relationship between the assault perpetrated by the co-defendant and the death of Mr. Williamson. In a related argument, defendant contends that the trial judge failed to adequately instruct the jury with respect to the requisite causal connection between the perpetrated assault and the death of decedent. Neither contention is meritorious.

During the state's case-in-chief, Dr. Page Hudson, Chief Medical Examiner of the State of North Carolina, detailed the nature and extent of injuries suffered by Mr. Williamson which he observed in the course of an autopsy which he conducted on deceased's body. In addition to direct indications of both internal

and external injuries resulting directly from blows inflicted during the course of the attempted robbery, Dr. Hudson's internal examination of decedent's body revealed severe ateriosclerosis in the heart and the arteries of the heart as well as scar tissue in the heart muscle itself indicating that decedent had suffered a prior heart attack. Dr. Hudson observed that the injuries which decedent incurred would have stimulated the heart enormously, providing a great deal of stress to the heart and his blood pressure level. Dr. Hudson testified that he was of the opinion that the injuries and the stress which they brought about contributed to and in fact accelerated Mr. Williamson's death. On cross-examination, the doctor testified that "[I] would say that this man's heart was in terrible condition. . . . In part this man died from a heart attack . . . . Based upon my autopsy this man was a walking bombshell. Any severe stress could have caused his heart to stop . . . . His heart condition was such that he would have been susceptible to have his heart stop . . . if his heart was bothered, stimulated or irritated."

[3]    A person is criminally responsible for a homicide only if his act caused or directly contributed to the death of the victim. *State v. Jones,* 290 N.C. 292, 225 S.E. 2d 549 (1976); *State v. Luther,* 285 N.C. 570, 206 S.E. 2d 238 (1974); *State v. Horner,* 248 N.C. 342, 103 S.E. 2d 694 (1958). The consequences of an assault which is the direct cause of the death of another are not excused nor is the criminal responsibility for the death lessened by a preexisting physical condition which made the victim unable to withstand the shock of the assault and without which preexisting condition the blow would not have been fatal. *State v. Luther, supra; State v. Knight,* 247 N.C. 754, 102 S.E. 2d 259 (1958); *see generally* W. LaFave & A. Scott, Handbook on Criminal Law § 35 (1972); 2 Wharton's Criminal Law § 115 (14th ed. 1979). The testimony of Dr. Hudson, coupled with the testimony of decedent's wife which outlined her husband's history of high blood pressure, was sufficient for the state's case to withstand defendant's motion for nonsuit.

The second question presented by this assignment of error concerns the instructions of the trial court to the jury. The presiding judge instructed the jury that if they were to find defendant guilty of first-degree murder in the perpetration of a

felony, the state must have proven beyond a reasonable doubt, *inter alia,*

> ... that the beating was a proximate cause of Wilbur Faulk Williamson's death. A proximate cause is a real cause without which Wilbur Faulk Williamson's death would not have occurred.
>
> The defendant's act need not have been the only cause or the last or nearest cause. It is sufficient if it concurred with some other cause, acting at the time which in combination with it, caused the death of Wilbur Faulk Williamson.

In light of our discussion of the law above, this charge was sufficient.

[4] By his third assignment of error, defendant contends that the trial court erred in admitting over objection evidence which tended to show that the decedent was accustomed to keeping large sums of money on his person. This contention is without merit.

Decedent's wife testified that he was usually in possession of large sums of money, carrying it in his wallet and in a money clip; that he kept "several hundred dollars in his billfold" to cash checks and make change; and that he never carried less than a thousand dollars in his money clip which he used for "personal reasons."

Relevant evidence will not be excluded simply because it may tend to prejudice the opponent or excite sympathy for the party who offers it. *State v. Braxton,* 294 N.C. 446, 242 S.E. 2d 769 (1978); *State v. Lee,* 293 N.C. 570, 238 S.E. 2d 299 (1977). However, if the only effect of the evidence is to excite prejudice or sympathy, its admission *may* be grounds for a new trial. *State v. Lynch,* 279 N.C. 1, 181 S.E. 2d 561 (1971); *State v. Johnson,* 270 N.C. 215, 154 S.E. 2d 48 (1967). Ordinarily, however, the reception of irrelevant evidence is considered harmless error. *See generally* 1 Stansbury's North Carolina Evidence § 9 (Brandis Rev. 1973). The burden is on the party who asserts that evidence was improperly admitted to show not only error but also to show that he was prejudiced by its admission. *State v. Agnew,* 294 N.C. 382, 241 S.E. 2d 684 (1978); *State v. Cross,* 284 N.C. 174, 200 S.E. 2d 27 (1973).

While we are unable to perceive any grounds upon which the testimony in question was relevant to the issues in the case

against defendant, defendant has not carried his burden of showing that the evidence was so prejudicial that had it not been for the admission of the irrelevant evidence a different result would have ensued. *See State v. Cross, supra.* Furthermore, earlier in the trial, Officer Charles E. Ward, a detective with the Halifax County Sheriff's Department, was permitted to testify without objection that in the course of his investigation of the crimes he had the occasion to examine the clothing of the decedent; and that Mr. Williamson was carrying on his person at the time of the attempted robbery the sum of $1,630 in his billfold and his money clip. While the testimony of Mrs. Williamson on this point was irrelevant because there was no other evidence which suggested that defendant and Boyd knew of decedent's practice, testimony of a similar nature had already been elicited from Detective Ward and had been placed before the jury for its consideration.

By his fourth assignment of error, defendant contends that the trial court committed error by failing to adequately state the contentions of defendant and by failing to instruct the jury on lesser included offenses which were raised by the evidence. Neither contention is meritorious.

Defendant asserts that in submitting the case to the jury, the trial judge failed to address his contention that the decedent died not from the perpetrated assault but from a preexisting heart condition. He further argues that the judge failed to state any of his contentions regarding the relationship between the assault perpetrated upon the victim and the ultimate cause of his death. Defendant misconstrues the judge's charge. At no point did the judge attempt to summarize the contentions of either the state or of the defendant. In fact, he pointed out his failure to do so to the jury, instructing them that it was their " . . . duty to not only consider all of the evidence, but also to consider all of the arguments, the contentions and positions urged by the state's District Attorney and the defendant's attorney in their speeches . . . and any other contentions that arise from the evidence . . . ." The trial judge is not required to state the contentions of litigants. *State v. Hewett,* 295 N.C. 640, 247 S.E. 2d 886 (1978); *State v. Dietz,* 289 N.C. 488, 223 S.E. 2d 357 (1976).

[5] In submitting the case to the jury, the trial judge submitted two possible verdicts as to each charge which defendant faced.

The jury was given the option of finding defendant guilty of attempted armed robbery with a dangerous weapon or not guilty of that charge; and guilty of first-degree murder or not guilty of that charge. Defendant argues that the evidence in the light most favorable to him could have permitted the jury to conclude that his role in the case was that of an accessory after the fact of robbery with a dangerous weapon.

There is no error in a failure to instruct a jury on the crime of being an accessory after the fact where all of the evidence construed together tends to show actual participation in the substantive crime charged. *State v. Brower*, 289 N.C. 644, 224 S.E. 2d 551 (1976). An accessory after the fact is an individual who, after a felony has been committed, with knowledge of its commission, renders personal assistance to the felon in any manner to aid him to escape arrest or punishment. *State v. Potter*, 221 N.C. 153, 19 S.E. 2d 257 (1942); *State v. Dunn*, 208 N.C. 333, 180 S.E. 708 (1935). There is nothing in the record of this case which indicates that there was any evidence upon which the jury could conclude that defendant was an accessory after the fact. His own testimony indicates that Boyd informed him of the planned robbery and instructed him as to what he was to do. Defendant complied with those instructions. By his own statements, therefore, defendant acknowledged that he aided in the actual perpetration of the crime.

[6] By his sixth assignment of error, defendant contends that the trial court erred in sentencing him to life imprisonment, alleging cruel and unusual punishment and a denial of the equal protection of the laws in light of the subsequent imposition upon his codefendant of a sentence of sixty to eighty years imprisonment. This contention is without merit.

The trial court, upon conviction of defendant on both the attempted armed robbery charge and the murder charge, conducted a sentencing hearing for the determination of defendant's punishment for the capital felony of first-degree murder. At the close of the proceeding, the jury recommended that defendant be sentenced to life imprisonment on the murder conviction. Defendant had been previously sentenced to life on the attempted armed robbery charge. At a subsequent session of the court the codefendant, Thomas Boyd, was permitted to plead guilty to second-

degree murder and he was sentenced to a term of sixty to eighty years in prison.

If the recommendation of the jury in the sentencing phase of a capital case is that the defendant be imprisoned for life, the trial judge is obligated to impose that sentence. G.S. § 15A-2002. In that instance, he has no discretion to exercise in the imposition of sentence. Punishment which does not exceed the limits fixed by statute cannot be classified as cruel and unusual punishment in the constitutional sense unless the punishment provisions of the statute itself are unconstitutional. *State v. Williams*, 295 N.C. 655, 249 S.E. 2d 709 (1978); *State v. Cradle*, 281 N.C. 198, 188 S.E. 2d 296, *cert. denied* 409 U.S. 1047, 34 L.Ed. 2d 499, 93 S.Ct. 537 (1972). Life imprisonment for first-degree murder does not constitute cruel and unusual punishment. *Compare, Gregg v. Georgia*, 428 U.S. 153, 49 L.Ed. 2d 859, 96 S.Ct. 2909 (1976); *State v. Barfield*, 298 N.C. 306, 259 S.E. 2d 510 (1979). A mere disparity in the sentences imposed upon codefendants is not sufficient to amount to cruel and unusual punishment in the constitutional sense. *State v. Benton*, 276 N.C. 641, 174 S.E. 2d 793 (1970).

[7] By his fifth assignment of error, defendant contends that the trial court erred in failing to arrest judgment entered on the conviction of attempted armed robbery; he argues that it merged into the first-degree murder charge because the state proceeded on the theory of felony murder. The state concedes error on this point. We agree.

The indictment which charged defendant with the first-degree murder of Wilbur Faulk Williamson alleged that he "feloniously, wilfully, and of his malice aforethought, deliberately and premeditately did kill and murder" decedent. The state proceeded at trial on the theory of felony murder. The case was submitted to the jury after a charge on the elements of felony murder which included a requirement that the state prove beyond a reasonable doubt that the defendant attempted to commit robbery.

That there is such a variance is not fatal to the conviction. Notwithstanding the allegation contained in the indictment pertaining to a killing with malice after premeditation and deliberation, a conviction of first-degree murder will be sustained if the evidence shows and the jury finds that the killing was done in the

perpetration of or in the attempt to perpetrate a felony. *State v. Moore*, 284 N.C. 485, 202 S.E. 2d 169 (1974). A defendant who is convicted of first-degree murder on the theory of felony murder cannot be subjected to additional punishment for the underlying felony as an independent criminal offense. *State v. Small*, 293 N.C. 646, 239 S.E. 2d 429 (1977); *State v. McLaughlin*, 286 N.C. 597, 213 S.E. 2d 238 (1975), *death sentence vacated*, 428 U.S. 903, 49 L.Ed. 2d 1208, 96 S.Ct. 3206 (1976); *State v. Moore, supra.* Accordingly, the judgment imposed on the verdict finding defendant guilty of attempted armed robbery with a dangerous weapon is arrested.

In defendant's trial and the judgment entered for first-degree murder, we find no error.

In the armed robbery case, the judgment is arrested.