STATE OF NORTH CAROLINA v. JAMES LEWIS JACKSON

No. 98

(Filed 27 January 1981)

**1. Criminal Law § 29— capacity to stand trial — sufficiency of court's findings**

There was no merit to defendant's argument that because the court did not adopt the report by the State on defendant's capacity to stand trial, any finding that defendant suffered some sort of mental disease was unsupported by the evidence, nor was there merit to his argument that the trial court was required to adopt the psychiatric report of either the State or the defense but could not arrive at an independent conclusion, and the finding of the trial judge that defendant was competent to stand trial was clearly supported by the evidence where evidence offered by the State indicated defendant was fully capable of standing trial; testimony for the defense was to the effect that in stressful situations the defendant manifested some symptoms of mental illness; but defendant's expert witness also stated that in his opinion defendant understood the nature of the proceedings against him.

**2. Arrest and Bail § 3.1— warrantless detention — reasonableness**

There was no merit to defendant's contention that he was unlawfully detained prior to his arrest because he was stopped by a policeman who did not have probable cause to detain him but who responded to a request from the officer with whom the rape victim was riding that defendant be detained, since the detention was reasonable as to time, occurring in the middle of the day after defendant was spotted walking along a road, and it was also reasonable as to manner because the officer who stopped defendant simply asked him to wait until the investigating officer arrived, a period of a few minutes, and this defendant willingly did.

**3. Searches and Seizures § 5— knife in plain view — warrantless seizure proper**

In a first degree rape case where the victim contended that her assailant executed the crime at knife point, the trial court did not err in denying defendant's motion to suppress a knife found among his belongings on the ground that it was found during an illegal search, since a police officer and friend of defendant's family went to defendant's home to secure a change of clothing for defendant; the officer told defendant's mother of the arrest and the reason for the visit; the mother invited the officer into the kitchen where defendant's clothing was in two bags; defendant's mother opened one of the bags and a knife fell out; and the officer had the right to take the knife under the "plain view" doctrine.

**4. Criminal Law § 87.3— notes carried by officer to witness stand — denial of access to defendant**

The trial court did not err in refusing to afford defendant access to notes carried to the witness stand by the investigating officer, since the officer never referred to the notes during his testimony and in fact never read the notes at all, and where a witness on the stand does not use or attempt to use the writings sought to be produced, even though the writings are under his control, opposing counsel cannot compel their production.

State v. Jackson

### 5. Criminal Law § 61.2— shoeprints at crime scene — admissibility

Defendant's contention that only an expert could properly testify as to identification of shoeprints is not the law in this State, nor was there merit to defendant's argument that lay testimony concerning the identification of shoeprints is not admissible unless it satisfies the three-prong test of *State v. Palmer*, 230 N.C. 205, since the principles stated in that case are to be applied where the sufficiency of circumstantial evidence to withstand the motion for nonsuit is the question before the court, rather than the admissibility of shoeprint evidence which was the question in this case.

### 6. Criminal Law § 63— psychiatrist's testimony — admissibility

There was no merit to defendant's contention that testimony by a State psychiatrist concerning the result of a psychiatric test given defendant was impermissible hearsay because the psychiatrist did not personally administer the test, since the evidence did not establish conclusively that the psychiatrist did not participate in administering the test, and even if the test was administered by an assistant, the doctor's evaluation of the test results was admissible, since a diagnostic opinion is not incompetent even if based on information obtained from others.

### 7. Criminal Law § 131— undisclosed SBI lab report — mistrial not required

The trial court did not err in denying defendant's motion for mistrial based on the discovery by defendant, on the fourth day of trial, of a previously undisclosed lab report which revealed that an SBI expert had found insufficient characteristics present in the photographs of shoeprints at the crime scene to enable the examiner to render an opinion as to whether defendant's shoes could have made the heel impressions shown in the photographs, since the existence of that report in no way affected the competency of the investigating officer's testimony concerning his personal observation of the shoeprints; defendant did not take advantage of the trial court's offer to assist in locating the SBI expert if defendant thought his testimony would be helpful; although defendant obtained possession of the report before the State rested its case, he made no effort to introduce the report into evidence; and inasmuch as the report was prepared by the SBI in connection with the investigation of the case, the report was not statutorily discoverable except by voluntary disclosure.

### 8. Criminal Law § 138.7— sentencing hearing — testimony considered

In a first degree rape case there was no merit to defendant's contention that the trial court erred in admitting testimony at his sentencing hearing by a woman who recognized defendant as the man who raped her several days before the rape in question, though this testimony would not have been admissible at the guilt phase of the trial, since formal rules of evidence do not apply at a sentencing hearing, and there was no showing of abuse of discretion, as the sentence of life imprisonment for the rape conviction was mandated by statute.

Justice MEYER took no part in the consideration or decision of this case.

APPEAL by defendant from judgments of *Brewer, J.*, entered at the 18 March 1980 Session of ORANGE Superior Court.

Defendant was convicted of first degree rape of Kathleen Buck and second degree burglary of Buck's residence on the night of 11 December 1979. He was sentenced to life imprisonment for the rape and fifteen to twenty years in prison for the burglary, to run consecutively.

At trial, evidence for the State tended to show that on 11 December 1979 the prosecutrix was confronted in her home by a black man armed with a knife. The knife appeared to be one owned by the victim. At knifepoint the intruder forced the prosecutrix to have sexual intercourse against her will. A short time later the assailant left the house on foot.

On 12 December 1979, the day following the incident, the prosecutrix was riding in a police car when she spotted defendant walking beside the road. She immediately identified him as her assailant. The police officer in the car radioed for the assistance of another officer to detain defendant while he drove the prosecuting witness home. The investigating officer then returned and arrested defendant.

Where relevant, other facts will be discussed in the body of the opinon.

*Rufus L. Edmisten, Attorney General, by Barry S. McNeill, Associate Attorney, for the State.*

*Barry T. Winston, attorney for defendant appellant.*

HUSKINS, Justice:

[1] Defendant first assigns error to the finding by the trial court that defendant had sufficient capacity to stand trial. The amended record shows that a psychiatrist offered by the State, Dr. James F. Groce, found no evidence of psychosis. Defendant's psychiatrist, Dr. Milton F. Gipstein, testified at a hearing on defendant's motion prior to trial that he found defendant clearly psychotic.

Defendant had been ordered evaluated at Dorothea Dix Hospital by Judge Paschal on 13 December 1979. The staff of that hospital reported him competent to stand trial on 19 December 1979. On hearing the evidence of both the State and defendant, Judge Brewer entered an order on 13 February 1980 finding defendant competent to stand trial. That same day, Judge Brewer also ordered defendant reevaluated apparently in light of Dr. Gip-

stein's testimony that defendant did have mental problems. The staff of Dorothea Dix again found defendant competent on 7 March 1980.

In his order of 13 February 1980 finding defendant competent, Judge Brewer adopted *in toto* neither the report of the State's psychiatrist that defendant was fully competent nor the finding of defendant's psychiatrist that defendant was psychotic. Rather, Judge Brewer found defendant manifested some symptoms of mental illness but nonetheless had sufficient capacity to proceed to the trial.

Defendant argues that because the court did not adopt the report by the State, any finding that defendant suffered some sort of mental disease was unsupported by the evidence. In effect, defendant argues that the trial court in this instance was required to adopt the psychiatric report of either the State or the defense but could not arrive at an independent conclusion. Such is not the law.

The test for capacity to stand trial is whether a defendant has capacity to comprehend his position, to understand the nature of the proceedings against him, to conduct his defense in a rational manner and to cooperate with his counsel so that any available defense may be interposed. *State v. Bundridge*, 294 N.C. 45, 239 S.E.2d 811 (1978). The issue may be resolved by the trial court with or without the aid of a jury. *State v. Willard*, 292 N.C. 567, 234 S.E. 2d 587 (1977). When the trial judge conducts the inquiry without a jury, the court's findings of fact, if supported by competent evidence, are conclusive on appeal. *State v. Cooper*, 286 N.C. 549, 213 S.E.2d 305 (1975).

Here, the evidence offered by the State indicated defendant was fully capable of standing trial. Testimony for the defense by Dr. Gipstein was to the effect that in stressful situations the defendant manifested some symptoms of mental illness. But Dr. Gipstein also stated that in his opinion Jackson understood the nature of the proceedings against him. Based on the psychiatric evidence before the court, the finding of the trial judge that defendant was competent was clearly supported by competent evidence and is binding on appeal. *State v. Cooper, supra.*

As a second assignment, defendant asserts error in the trial court's denial of his motions to suppress various items of evidence. We will consider the two challenged rulings separately.

**[2]** Prior to trial, defendant filed a motion to suppress various items of evidence seized from his person following his arrest. Defendant contends he was unlawfully detained prior to his arrest, and, therefore, items seized incident to his arrest should have been suppressed.

The factual basis for defendant's allegation that he was unlawfully detained is found, according to defendant, in his being stopped by a Carrboro policeman who did not have probable cause to detain him. Rather, that officer responded to a request from the officer with whom the prosecutrix was riding that the defendant be detained.

Detention on "investigative custody" without probable cause to make a warrantless arrest is restricted by the Fourth Amendment prohibition of unreasonable search and seizure. *Davis v. Mississippi*, 394 U.S. 721, 22 L. Ed.2d 676, 89 S.Ct. 1394 (1969). Nevertheless, decisions both state and federal have recognized the need and the right of a police officer in the performance of his duties, and in limited circumstances, to detain a person who is not subject to lawful arrest. *See, e.g., Adams v. Williams*, 407 U.S. 143, 32 L.Ed. 2d 612, 92 S.Ct. 1921 (1972); *Terry v. Ohio*, 392 U.S. 1, 20 L.Ed.2d 889, 88 S.Ct. 1868 (1968); *State v. McZorn*, 288 N.C. 417, 219 S.E.2d 201 (1975), *death sentence vacated*, 428 U.S. 904, 49 L.Ed.2d 1210, 96 S.Ct. 3210 (1976). The constitutional question here, simply put, is whether the detention of this defendant was reasonable. We hold that it was.

First, we note that the detention was reasonable as to time. It occurred in the middle of the day after defendant was spotted walking along the road. It was also reasonable as to manner. The officer who stopped the defendant simply asked him to wait until the investigating officer arrived, a period of a few minutes. This the defendant willingly did. As the Supreme Court stated in *Adams v. Williams, supra*, 407 U.S. at 145, 32 L.Ed.2d at 616-17, 92 S.Ct. at 1923:

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response.

This assignment is overruled.

[3] Defendant also filed a motion to suppress a knife found among his belongings, on the grounds that it was found during an illegal search. Apparently, after the arrest, a police officer and friend of defendant's family went to defendant's home to secure a change of clothing for defendant. The officer told defendant's mother of the arrest and the reason for the visit. The mother invited the officer into the kitchen, where defendant's clothing was in two bags. Defendant's mother opened one of the bags and a knife fell out. Upon request, the mother gave the knife to the officer.

Defendant's primary argument is that his mother, by going through defendant's things, was an agent of the State and engaged in a warrantless search. *See* 68 Am. Jur. 2d, Searches and Seizures § 14. But the factual record shows defendant's mother was not asked to search her son's clothes, nor did the police officer intend to conduct a warrantless search. The sole purpose of the officer's visit was to secure a change of clothing for defendant. The officer was invited into the room where the bags were by the person in control of the house, the mother. There, when the knife fell into view, the officer had the right to take it under the "plain view" doctrine. *Harris v. United States*, 390 U.S. 234, 19 L.Ed.2d 1067, 88 S.Ct. 992 (1968); *State v. Hunter*, 299 N.C. 29, 261 S.E.2d 189 (1980).

Defendant next asks this Court to abandon its adherence to test of insanity established by the M'Naghten rule in favor of the American Law Institute's Model Penal Code standard. *See* American Law Institute, Model Penal Code, Proposed Official Draft, § 4.01 (1962). Suffice it to say that we have adhered to the "right and wrong" M'Naghten test for many years and are not disposed to depart from it now. *See State v. Connley*, 295 N.C. 327, 245 S.E.2d 663 (1978), *vacated on other grounds*, 441 U.S. 929, 60 L.Ed.2d 657, 99 S.Ct. 2046 (1979), and cases cited therein.

[4] As his fourth assignment, defendant alleges error by the trial court in its refusal to afford him access to notes carried to the witness stand by the investigating officer. The notes which defendant sought were written by a gynecology resident as he interviewed the prosecutrix during her examination immediately after the rape. The trial court stipulated that the notes were included in the "packet of notes" which the officer took to the stand. The record also shows the officer never referred to the notes during his testimony,

and in fact never read the notes at all. Where a witness on the stand does not use or attempt to use the writings sought to be produced, even though the writings are under his control, opposing counsel cannot compel their production. *Manufacturing Co. v. Railroad*, 222 N.C. 330, 23 S.E.2d 32 (1942); 3 Wigmore, Evidence § 762 (Chadbourn rev. 1970). If the witness had referred to the notes for the purpose of refreshing his recollection, defense counsel would have been entitled to examine them. *State v. Carter*, 268 N.C. 648, 151 S.E.2d 602 (1966). This assignment is overruled.

**[5]** Defendant next assigns as error the admission of non-expert opinon testimony as to the similarity between the design on the sole of shoes taken from the defendant and shoeprints found at the scene of the crime. Defendant challenges, first, the competency of a lay witness to testify on this point and, second, that any comparison at all is inadmissible unless a foundation satisfying the three-pronged test of *State v. Palmer*, 230 N.C. 205, 52 S.E.2d 908 (1949), is laid before the testimony is heard.

Defendant's contention that only an expert can properly testify as to identification of tracks is not the law in this State. *State v. Atkinson*, 298 N.C. 673, 259 S.E.2d 858 (1979).

Defendant's second argument that lay testimony concerning the identification of shoeprints is not admissible unless it satisfies the three-pronged standard of *State v. Palmer, supra*, is also erroneous.

In *Palmer*, this Court considered only the question whether the trial court should have granted defendants' motion for judgment of nonsuit. The State's evidence clearly demonstrated that the deceased died by a criminal act. However, proof that the criminal act was committed by defendants was *solely circumstantial*. The evidence tending to identify defendants as perpetrators of the murder was shoeprints and automobile tracks found near the victim's body and evidence of a possible motive to kill the victim. In dealing with the evidence of shoeprints, Justice Ervin wrote:

> In the nature of things, evidence of shoeprints has no legitimate or logical tendency to identify an accused as the perpetrator of a crime unless the attendant circumstances support this triple inference: (1) That the shoeprints were found at or near the place of the crime; (2)

that the shoeprints were made at the time of the crime; and (3) that the shoeprints correspond to shoes worn by the accused at the time of the crime. Similar criteria apply to evidence of automobile tracks offered to identify the owner of a motor vehicle as the perpetrator of an offense.

Moreover, the bare opinon of a witness that a particular shoeprint is the track of a specified person is without probative force on the question of identification.

*Id.* at 213-14, 52 S.E. 2d at 913 (citations omitted). The State's evidence in *Palmer* provided no connection between the shoeprints or tiretracks and the crime itself or those accused of the crime. The evidence was held too tenuous and speculative to justify submitting the case to the jury.

The three circumstances enumerated in *Palmer* thus test the weight to be given such evidence and not its admissibility. We have given this interpretation to *Palmer* in the past. *"Palmer* dealt with the weight to be assigned the evidence of the shoe print in determining a motion for nonsuit, not its admissibility." *State v. Long*, 293 N.C. 286, 295, 237 S.E.2d 728, 734 (1977); *see also State v. Banks*, 295 N.C. 399, 245 S.E.2d 743 (1978); *State v. Willis*, 281 N.C. 558, 563, 189 S.E.2d 190, 193 (1972); *State v. Pinyatello*, 272 N.C. 312, 158 S.E.2d 596 (1968); *State v. Bass*, 253 N.C. 318, 116 S.E.2d 772 (1960); *State v. Tew*, 234 N.C. 612, 68 S.E.2d 291 (1951).

A body of case law also exists which cites *Palmer* for the proposition that the three factors stated therein are three prerequisites to admissibility of shoeprint evidence. *State v. Atkinson*, 298 N.C. 673, 259 S.E.2d 858 (1979); *State v. Lewis*, 281 N.C. 564, 569-70, 189 S.E.2d 216, 220, *cert. den.*, 409 U.S. 1046, 34 L.Ed.2d 498, 93 S.Ct. 547 (1972); *McAbee v. Love*, 238 N.C. 560, 78 S.E.2d 405 (1953); *State v. Walker*, 6 N.C. App. 447, 170 S.E.2d 627 (1969).

The use of the triple inference stated in *Palmer* as a test for admissibility of shoeprints is improper. The cited cases are no longer authoritative on this point. The principles stated in *Palmer* are to be applied where the *sufficiency* of circumstantial evidence to withstand a motion for nonsuit is the question before the Court rather than the *admissibility* of shoeprint evidence. Evidence of shoeprints at the scene of the crime corresponding to those of the accused may always be admitted as tending more or less strongly to

connect the accused with the crime. *State v. Long, supra; State v. Pinyatello, supra; State v. Warren,* 228 N.C. 22, 44 S.E.2d 207 (1947); 1 Stansbury, North Carolina Evidence § 85 (Brandis rev. 1973).

In the present case, evidence of shoeprints found in the driveway the day following the attack which corresponded with those of the accused was properly admitted as tending to connect defendant with the crime. The admissibility of such evidence is consistent with the rule of relevance which permits the introduction of any evidence which "has any logical tendency however slight to prove the fact at issue in the case." 1 Stansbury, North Carolina Evidence § 77 (Brandis rev. 1973). Here, defendant's plea of not guilty placed upon the State the burden of proving every element of the crime charged, including identity. The shoeprint evidence was, therefore, admissible to corroborate the prosecuting witness's identification of defendant as her assailant. The weight to be given it was a matter for the jury since it was not the sole evidence connecting defendant with the crime. If the shoeprints were the only evidence connecting defendant to the crime, then a question of *sufficiency of the evidence* would arise and the three-pronged standard of *Palmer* would be applicable. However, the question raised in this assignment is admissibility of the evidence and in that respect there is no error.

Nor did the trial court err in admitting into evidence for illustrative purposes photographs of shoeprint impressions found in the victim's driveway. The photographs were properly admitted for the purpose of illustrating the witness's testimony. *State v. Casper,* 256 N.C. 99, 122 S.E.2d 805 (1961), *cert. den.,* 376 U.S. 927, 11 L.Ed.2d 622, 84 S.Ct. 691 (1964). Defendant's companion assignment, that it was error to allow the jury to examine the photographs and the shoes seized from defendant, is also without merit. *State v. Atkinson,* 275 N.C. 288, 167 S.E.2d 241 (1969), *death sentence vacated,* 403 U.S. 948, 29 L.Ed.2d 859, 91 S.Ct. 2283 (1971); *State v. Speller,* 230 N.C. 345, 53 S.E.2d 294 (1949); 1 Stansbury, North Carolina Evidence § 118 (Brandis rev. 1973).

Defendant's argument that the State failed to lay a proper foundation for the introduction of blood test results performed on the prosecutrix and the defendant is rebutted by the factual record. It is therefore overruled.

**[6]** Defendant next alleges that testimony by a State psychiatrist

concerning the result of a psychiatric test given the defendant was impermissible hearsay. The witness testified that defendant was given the test "under my direction" and that the test showed "no evidence of any organic brain damage." Defendant argues that because the doctor did not personally administer the test this testimony was hearsay.

We find this argument unpersuasive. The cited testimony does not establish conclusively that Dr. Groce did not participate. But, even if the test was administered by an assistant, the doctor's evaluation of the test results is admissible. A diagnostic opinion is not incompetent even if based on information obtained from others. *State v. DeGregory*, 285 N.C. 122, 203 S.E.2d 794 (1974).

[7] By his next assignment, defendant charges error to the denial of his motion for a mistrial. That motion was based on the discovery by defendant, on the fourth day of trial, of a previously undisclosed SBI lab report. The report revealed that an SBI expert had found insufficient characteristics present in the photographs of the shoeprints to enable the examiner to render an opinion as to whether the shoes "could or could not have made the heel impressions" shown in the photographs.

To begin with, the existence of that report in no way affects the competency of Officer Tripp's testimony concerning his *personal* observation of the shoeprints. Secondly, the defendant did not take advantage of the trial court's offer to assist in locating the SBI expert if the defendant thought his testimony would be helpful. Although defendant obtained possession of the report before the State rested its case, he made no effort to introduce the report into evidence. Finally, inasmuch as the report was prepared by the SBI in connection with the investigation of the case, the report was not statutorily discoverable except by voluntary disclosure. G.S. 15A-904(a).

In considering defendant's motions for dismissal, the evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn from it. *State v. Lee*, 294 N.C. 299, 240 S.E.2d 449 (1978). Applying that rule of law to the case *sub judice*, we find no error in the trial court's denial of defendant's motions for dismissal.

[8] As a final assignment of error, defendant challenges the admissibility of testimony at the sentencing hearing by a woman who

State v. Jackson

recognized the defendant as the man who raped her on 24 November 1979. Apparently this witness had been unable to identify her assailant from a group of photographs, but recognized him when she came to observe this trial. Prior to her identification of defendant, this witness had been informed that his fingerprints had been found in her house, and that he was on trial for rape.

To begin with, under G.S. 15A-1334(b), formal rules of evidence do not apply at a sentencing hearing. Thus the fact that this testimony would not be admissible at the guilt phase of the trial does not bar its reception at the sentencing phase.

"A judgment will not be disturbed because of sentencing procedures unless there is a showing of abuse of discretion, procedural conduct prejudicial to defendant, circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play." *State v. Pope*, 257 N.C. 326, 335, 126 S.E. 2d 126, 133 (1962). We find no reason to disturb the judgment here. The sentence of life imprisonment for the rape conviction was mandated by statute. G.S. 14-21 (repealed effective January 1, 1980). The sentence imposed on the conviction of second degree burglary was much less than the maximum the statute allows. G.S. 14-52(a). This assignment is overruled.

Our examination of defendant's arguments and our own review of the record convince us that the defendant received a fair trial, free from prejudicial error. Accordingly, the judgments of the trial court must be upheld.

No error.

Justice MEYER took no part in the consideration or decision of this case.