STEELMAN, Judge.
Defendant Tom Frederick accompanied by his brother broke into the home of 70 year old James Morris (Morris) on 7 September 2000 and stole approximately $7000.00 in cash while Morris slept. Believing Morris still had substantial cash in his mobile home, defendant, Henry Jones (Jones) and Michael Pearson (Pearson) set out to rob Morris again on 29 September 2000, driven by defendant's girlfriend Stephanie Belk (Belk). Defendant and two accomplices broke into and ransacked Morris' home in an attempt to locate the cash they believed to be on premises. In the course of this conduct, defendant or his accomplices restrained the sleeping Morris and bound his hands and feet. Morris pleaded with hiscaptors to be untied and assured them that there was no more money in his mobile home. One of defendant's accomplices hit Morris in the head with a can of Beanie Weanies. After searching the premises and taking guns and about $300.00 in cash, defendant and his accomplices left Morris, who was still pleading to be untied. Morris was found dead, tied up beside his bed, the following day. He died of a heart attack.
Morris had severe cardiovascular disease and generalized artereosclerosis affecting his heart and brain, and had previously had one or more strokes. There was no dispute that Morris had been very ill for a few years, and had been at high risk of death from heart attack for some time. Morris was taking Coumadin, a blood thinner, which made him susceptible to bruising and hampered the clotting of his blood.
Defendant made a statement to investigators confessing to the robberies but denying that he had touched Morris or seen anyone hit him. Defendant was indicted for murder, first-degree kidnapping, two counts of first-degree burglary, common law robbery, two counts of conspiracy to commit first-degree burglary and larceny, and felonious larceny arising out of the incidents that took place on 7 September 2000 and 29 September 2000. The State asserted that there were aggravating circumstances attendant to the murder under N.C. Gen. Stat. § 15A-2000(e) and defendant was tried capitally at the 19 August 2002 Session of Criminal Superior Court for Harnett County. Defendant was convicted of first-degree murder under the felony murder rule, two counts of first-degree burglary, two counts of conspiracy to commit first-degree burglary, felonious larceny, and first-degree kidnapping. Defendant was sentenced to life imprisonment without parole for the conviction of first-degree murder. Defendant was sentenced to consecutive active terms of 116 to 149 months on the kidnapping charge, 103 to 133 months on one first-degree burglary and larceny charge, 34 to 50 months on each of the conspiracy charges, and 16 to 20 months on the common law robbery charge. Judgment was arrested on the second first-degree burglary conviction, it being the basis of defendant's felony murder conviction. Defendant appeals.
In defendant's second assignment of error, he argues the trial court erred in overruling defendant's objections to the testimony of the State's expert witness. We disagree.
Dr. Robert Thompson, a forensic pathologist, testified on several occasions that in his opinion the struggles of Morris arising out of the robbery on 30 September 2000 resulted in the heart attack that ultimately killed him. For example, Dr. Thompson testified without objection that:
I think his final episode was due to the heart, but I'm confident that the struggle that went on at his home, being pinned down, tied up, and his struggling, maybe to get loose, was the thing that precipitated the final episode of his heart stopping and causing death.
Defendant lodged objections to Dr. Thompson's testimony dealing with this opinion on only two occasions. The first instance where defendant objected to Dr. Thompson's testimony is as follows:
Q. Now, in relation to the abrasions ... to the shoulders and the hip and knees, would any one of those abrasions or all of the abrasions, occur just from, say, Mr. Morris, one time, trying to get up if he were in a struggle with somebody, or would it be more than one time, if he were being held down?
A. [Dr. Thompson] It does. I'm not sure I can tell. I guess it could happen with one time, but it's more likely to have occurred in several times and multiple times, when he was struggling to get away or get up.
Mr. Osborne: Objection, to the conclusion that he was struggling to get up. No evidence of that.
The Court: Overruled.
The second instance is as follows:
Q. Okay. Dr. Thompson, so is it your opinion now that he died as a result of either a heart attack or heart failure that resulted from a struggle that had occurred?
Mr. Osborne: Objection, leading question.
The Court: Overruled.
A. Yes.
On appeal, defendant argues it was error to allow Dr. Thompson to testify to his opinion that Morris died from a heart attack as a result of a struggle. Defendant claims Dr. Thompson's opinion as to the struggle was "outside his area of expertise; unsupported by physical evidence and entirely based on what he had been told by law enforcement officials." "In order to preserve a question for appellate review, a party must have presented to the trial court atimely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C.R. App. P. 10(b)(1)(2003).
In State v. Whitley, 311 N.C. 656, 661, 319 S.E.2d 584, 588 (1984), the Supreme Court stated:
the defendant waived his right to raise on appeal his objection to the evidence. Where evidence is admitted over objection, and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost. State v. Maccia, 311 N.C. 222, 316 S.E.2d 241 (1984); State v. Chapman, 294 N.C. 407, 241 S.E.2d 667 (1978); 1 Brandis on North Carolina Evidence § 30 (1982).
In the instant case, Dr. Thompson, without objection, testified on multiple occasions both before and after defendant's objections, as noted above, that in his opinion Morris died as a result of his struggles with the robbers on 30 September 2000. Because this opinion was admitted on multiple occasions without objection, and because defendant has not argued plain error in his brief, defendant has not properly preserved his right to appeal this issue. This assignment of error is without merit.
In his first assignment of error, defendant argues that the trial court erred by denying defendant's motions to dismiss the charge of first-degree murder for lack of evidence of proximate cause. We disagree.
"Upon defendant's motion for dismissal, the question for the [trial] court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offenseincluded therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." State v. Powell, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980)(citations omitted). Substantial evidence is relevant evidence that a reasonable person would find sufficient to support a conclusion. State v. Blake, 319 N.C. 599, 604, 356 S.E.2d 352, 355 (1987)(citation omitted). When reviewing a motion to dismiss based on insufficiency of the evidence, this Court must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve. . . . Once the court decides that a reasonable inference of defendant's guilt may be drawn from the circumstances, then "it is for the jury to decide whether the facts, taken singly or in combination, satisfy [it] beyond a reasonable doubt that the defendant is actually guilty."
State v. Barnes, 334 N.C. 67, 75-6, 430 S.E.2d 914, 918-19 (1993)(citations omitted)(emphasis removed). "In addition, the defendant's evidence should be disregarded unless it is favorable to the State or does not conflict with the State's evidence." State v. Fritsch, 351 N.C. 373, 379, 526 S.E.2d 451, 456 (2000)(citation omitted), cert. denied, Fritsch v. North Carolina, 531 U.S. 890, 148 L. Ed. 2d 150 (2000).
To warrant a conviction for homicide, the State must establish that the act of the accused was a proximate cause of the death. Defendant's actions need not be the sole and only proximate cause of the victim's death to be found criminally liable. A showing that the defendant's actions were one of the proximate causes is sufficient.
State v. Doyle, 161 N.C. App. 247, 253, 587 S.E.2d 917, 922 (2003)(citations omitted). Defendant argues that in light of Morris' extremely unstable health condition, State's evidence was not enough to survive a motion to dismiss as to the necessary element that defendant caused or directly contributed to Morris' death. See State v. Jones, 290 N.C. 292, 298, 225 S.E.2d 549, 552 (1976)(citations omitted).
Proximate cause is a cause that produced the result in continuous sequence and without which it would not have occurred, and one from which any man of ordinary prudence could have foreseen that such a result was probable under all the facts as they existed. Foreseeability is an essential element of proximate cause. This does not mean that the defendant must have foreseen the injury in the exact form in which it occurred, but that, in the exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected.
State v. Powell, 336 N.C. 762, 771-72, 446 S.E.2d 26, 31 (1994)(citations omitted).
State's evidence tended to show Morris, a 70 year old man with severe heart trouble, was attacked while he slept; that he was held down by one or more of his attackers; that he was "hog-tied;" that one of his attackers hit him in the head with a canned good; and that he was left by defendant and his accomplices, tied up and pleading to be untied. It is clear that "the defendant might have foreseen that some injury would result from his act . . . or that consequences of a generally injurious nature might have been expected." Injury to Morris was foreseeable. State's expert witness, Dr. Thompson, testified that he was "confident that the struggle that went on at [Morris'] home, being pinned down, tied up, and his struggling, maybe, to get loose, was the thing that precipitated the final episode of his heart stopping and causing his death." It was Dr. Thompson's opinion that Morris would not have died that night but for the actions of defendant and his accomplices. Defendant presented evidence, including expert medical testimony by Dr. Hudson, that Morris "could have" been having a heart attack before defendant and his accomplices arrived. In reviewing the trial court's decision to deny the motions to dismiss, we cannot consider any of defendant's evidence that contradicts the evidence of the State.
Defendant argues that his actions were not a proximate cause of Morris' death because they did not directly contribute to it. "The consequences of an assault which is the direct cause of the death of another are not excused nor is the criminal responsibility for the death lessened by a preexisting physical condition which made the victim unable to withstand the shock of the assault and without which preexisting condition the blow would not have been fatal." State v. Atkinson, 298 N.C. 673, 682, 259 S.E.2d 858, 864 (1979)(citations omitted), overruled on other grounds, State v. Jackson, 302 N.C. 101, 273 S.E.2d 666 (1981). The fact that Morris was more likely to die as a result of the actions of defendant and his accomplices than a healthier individual in no way prevents a finding that defendant's actions were a proximate cause of Morris' death. In the instant case, there was ample evidence that Morrisstruggled to get up and get free. One of defendant's accomplices (Jones) testified that defendant crept up to the sleeping Morris, placed his hand over the sleeping man's mouth, and flipped him over onto his stomach. Another accomplice (Pearson) held Morris down until they found a rope and tied Morris' hands and feet. Morris repeatedly said "please don't hurt me," and "If you just let me up, I'll give you the money." Jones testified that he heard a noise "like someone had hit Mr. Morris," and that Pearson "made a comment about he supposedly had hit the man with a - with a Beanee Weenee [sic] can . . . ." Dr. Thompson testified that injuries to Morris' head were consistent with being hit by a canned good, and that the multiple injuries apparent both within and on Morris' body were, in his opinion, sustained as a result of Morris struggling to get up or away. Viewed in the light most favorable to the State, there was ample evidence for the jury to reasonably determine that defendant's acts were a proximate cause of Morris' death. This assignment of error is without merit.
In his third assignment of error defendant argues that the trial court erred by admitting evidence that defendant had assaulted his girlfriend. We disagree.
The following exchange took place while the State was examining defendant's girlfriend at trial:
Q. All right. Now, have you ever taken - strike that. Has [defendant] ever assaulted you or hit you -
Mr. Osborne: Objection.
Q. - in the past year or so? The Court: Overruled.
A. We got in a little fight, yes.
Q. So did you take charges out on him for assault on a female?
A. Yes.
Q. In fact, on September 7th or so, did he do anything to you when you were arguing on that day?
A. That's when I took out -
Q. That's when you took out the papers?
A. Yeah.
Defendant asserts that this evidence was allowed at trial in violation of Rule 404(b) of the North Carolina Rules of Evidence, which prohibits the admission of evidence of other "crimes, wrongs, or acts" to "prove the character of a person in order to show that he acted in conformity therewith." Id.
Assuming arguendo that this evidence was improperly admitted, and that defendant preserved the right to appeal this issue, any error resulting from the admission of this evidence was harmless. It is the defendant's burden to prove prejudice when evidence is improperly admitted at trial. N.C. Gen. Stat. § 15A-1443(a)(2003). In order to meet this burden, defendant must prove that "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." Id. Defendant was convicted of first-degree murder based on the felony murder rule. There was plenary evidence that defendant broke into Morris' home, that Morris was assaulted and restrained during the commission of theburglary, and that Morris died from a heart attack as a result of the acts of defendant and his accomplices that night. We find that whatever prejudice may have resulted by the admission of the contested evidence, there is no reasonable possibility that had this evidence been excluded, a different result would have been reached at trial. This assignment of error is without merit.
In his final assignment of error, defendant argues that the trial court erred in its first-degree kidnapping jury instruction. We disagree.
N.C.R. App. P. 10(b)(2) (2003) states: "A party may not assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict..., provided, that opportunity was given to the party to make the objection out of the hearing of the jury, and, on request of any party, out of the presence of the jury." In the instant case, the trial court conducted a charge conference out of the presence of the jury. In this conference the proposed jury instructions were gone over in detail, and defendant was afforded the opportunity to object. Defendant did not object to the first-degree kidnapping charge, either in the charge conference or thereafter. For this reason, and because defendant has not asserted plain error, he has waived his right to appeal this issue. This assignment of error is without merit.
NO ERROR.
Judges TYSON and BRYANT concur.
Report per Rule 30(e).