STATE OF NORTH CAROLINA v. WILLIAM DONALD HAMRICK

No. 7627SC238

(Filed 21 July 1976)

1. Criminal Law § 34— murder prosecution — separate robbery committed by defendant — evidence admissible

   The trial court in a first degree murder prosecution did not err in admitting testimony by a witness concerning a plan by the witness, defendant and the murder victim to rob the witness's father, defendant's statement after that robbery that the murder victim claimed he had lost the money taken from the robbery victim, and defendant's statement that he might have to kill somebody after the witness told him about the murder victim's having spent a lot of money lately, since evidence of defendant's commission of the separate offense of robbery was admissible becauses it tended to show intent, design, and a chain of circumstances concerning the offense charged.

2. Criminal Law § 75— intoxicated defendant — incriminating statements made to witness — testimony admissible

   The trial court in a first degree murder prosecution did not err in allowing into evidence testimony by a witness concerning incriminating statements which defendant purportedly made to her, though defendant contended that he was so intoxicated from liquor and drugs at the time that he was unconscious of the meaning of his words, since there was evidence to support the trial court's findings that any drugs and liquor consumed by defendant were voluntarily consumed by him, defendant's intoxication, if any, did not amount to mania, and defendant was aware of what he was saying and doing when he made the statements.

3. Criminal Law § 87; Witness § 1— witness not on list furnished defendant — testimony proper

   Defendant was not prejudiced by the trial court's refusal to strike the testimony of a witness whose name was omitted from a list furnished defendant by the district attorney prior to trial, since the trial court offered defendant sufficient time to prepare for the proposed testimony of the witness, and defendant was in fact able to obtain two witnesses, prisoners, whose testimony tended to contradict the State's witness.

4. Homicide § 27— instruction on manslaughter — insufficient evidence to require

   In a prosecution for first degree murder testimony by a witness that defendant told her that he and the murder victim had gotten into an argument prior to the killing was not sufficient to support a charge on voluntary manslaughter.

5. Homicide § 26— second degree murder — instruction on malice proper

   The trial court's charge on second degree murder properly informed the jury that malice was an essential element of second degree murder.

APPEAL by defendant from *Fountain, Judge.* Judgment entered 28 July 1975 in Superior Court, LINCOLN County. Heard in the Court of Appeals 15 June 1976.

Defendant was indicted and tried for the first degree murder of Rudolph Lemmons. Trial was removed from Cleveland to Lincoln County. A previous trial ended with a hung jury, and upon retrial the State presented the following evidence:

Sylvia Lemmons testified that she took her husband to a tavern about 3:00 p.m. on 12 March 1974. She returned home and never saw her husband alive again. Susan Williams, employee at the tavern to which Sylvia Lemmons had carried her husband, testified that defendant came to the tavern around 5:30 p.m. on 12 March 1974, and that defendant and Rudolph Lemmons left there together.

Max Hamrick (not related to defendant) testified that he and another farmer discovered Rudolph Lemmons' body in a field on the morning of 13 March 1974, and they notified the sheriff. A wallet and a photograph of a little girl were found near the body.

Dr. Gentry testified concerning the autopsy he performed and stated that Lemmons died as a result of one of the wounds received from four .22 caliber bullets he removed. Officer Putnam testified that Max Hamrick led him to the body, and that he recognized the body as that of Rudolph Lemmons.

Johnny Black testified that while they were in prison he and defendant discussed the possibility of robbing Black's father, and that after their release from prison he, defendant and Rudolph Lemmons drew up plans for defendant and Lemmons to commit the robbery. Black stated that his father was robbed, and thereafter defendant complained to him that Lemmons contended he had lost the money which they had obtained from the robbery. Black further testified that on 12 March 1974, in response to defendant's inquiry, he, Black, told defendant that Lemmons had been spending a lot of money lately, and defendant then "said he might kill somebody tonight."

Dale Newton testified that she was with defendant and his wife at Myrtle Beach in August, 1974, and that defendant's wife left, following an argument with defendant. She stated that defendant had been drinking and that he had taken a tablet of the drug THC. Newton testified further that while she and defend-

ant were eating in a restaurant defendant told her that he had killed Lemmons because Lemmons had kept all the money from the robbery of Black's father. She stated that defendant further told her that before killing him defendant forced Lemmons to lock at a picture of his (Lemmons') daughter, and that defendant offered her $1,000 to find Johnny Black so that he could kill Black.

SBI agents testified concerning the bullets taken from Lemmons' body, and one of the agents expressed his opinion that all four bullets were fired from the same revolver and from a distance of no greater than three feet. Mrs. Lemmons also was recalled, and she identified the picture found near the body as that of their daughter.

Finally the State presented Richard Crisp who testified that in April, 1975, while he and defendant were in Central Prison, defendant told him about killing Lemmons after Lemmons kept the money obtained from a robbery, and that defendant had confessed the killing to Dale Newton.

Defendant presented Billy Dix and Wayne Enzor who testified that while in Central Prison defendant had discussed with them the murder charge pending against him in the presence of Richard Crisp, but that defendant had never admitted killing Lemmons.

Defendant's wife testified concerning the trip to Myrtle Beach and said that defendant was drunk and Dale Newton was "high" when she left, and that defendant had become angry with her and slapped her because she had brought Dale Newton to the beach with her.

Montie Britt testified that he was also along on the trip to Myrtle Beach, and that defendant and Dale Newton were drinking, and that he returned to the motel room late at night and found defendant and Dale Newton asleep in the same bed.

Defendant testified and denied any part in the robbery of Black's father, but said that he had heard Johnny Black and Lemmons discuss the robbery. He denied having any disagreement with Lemmons, and testified that he made his living selling marijuana and that Lemmons often helped him. Defendant also testified that Lemmons called him and asked for a ride on 12 March 1974, and that he took Lemmons home and never saw

him again. Defendant denied making incriminating statements to Dale Newton or anyone at Central Prison.

Defendant was found guilty of second degree murder and sentenced to 30 years. He appealed.

*Attorney General Edmisten, by Assistant Attorney General Charles J. Murray and Assistant Attorney Joan Byers, for the State.*

*Julian B. Wray and John D. Church for defendant appellant.*

ARNOLD, Judge.

[1]   We reject defendant's contention that the trial court erred in admitting testimony by Johnny Black concerning the plan to rob Black's father, defendant's statement after that robbery that Lemmons claimed he had lost the money taken from Black, and defendant's statement that he might have to kill somebody after Black told him about Lemmons having spent a lot of money lately. Defendant argues the general rule that in a prosecution for one crime the State cannot offer evidence tending to show that the accused has committed another distinct, independent or separate offense. However, the instant case falls within the exception that allows evidence of another offense where it tends to show *quo animo,* intent, design, guilty knowledge, make out the *res gestae,* or shows a chain of circumstances concerning the offense charged, and is so connected as to shed light upon one or more of these questions. See 2 N. C. Index 2d, Criminal Law, § 34; also, Stansbury, N. C. Evidence, Brandis Revision, § 92.

In this case the evidence concerning a robbery by defendant and the victim, Lemmons, the failure of defendant to receive any of the money obtained in the robbery, and the evidence that Lemmons was spending a lot of money was competent to show intent and design by defendant to kill Lemmons. It also establishes a chain of circumstances and is so connected with the charge of killing Lemmons so as to throw light upon that charge at trial. *State v. Jenerett,* 281 N.C. 81, 187 S.E. 2d 735 (1972); *State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241 (1969); *State v. Lassiter,* 16 N.C. App. 377, 192 S.E. 2d 21 (1972), *cert. den.* 282 N.C. 428 (1972). Moreover, we find that the court gave proper limiting instructions to the jury concerning their consideration of the evidence in question.

**[2]** The witness Dale Newton testified concerning incriminating statements which defendant purportedly made to her. Defendant asserts that the trial court erred in not allowing his objections and motions to strike and suppress this testimony. He contends that at the time he made the statements to Dale Newton he was so intoxicated from liquor and drugs that he was in a state of "mania" and unconscious of the meaning of his words, and that his admissions were therefore inadmissible. We disagree.

Before allowing Dale Newton to testify regarding defendant's incriminating statements the court conducted a voir dire and made findings of fact. There was competent evidence to support the trial court's findings that any drugs and liquor consumed by defendant were voluntarily consumed by him and not furnished by any police or government official, and that any intoxication, if any, of defendant did not amount to mania; and that in his statements to Dale Newton defendant was aware of what he was saying and doing. Since the trial court's findings of fact are supported by competent evidence they are conclusive before this Court. *State v. Simmons,* 286 N.C. 681, 213 S.E. 2d 280 (1975); *State v. Carey,* 285 N.C. 509, 206 S.E. 2d 222 (1974). The mere fact that defendant was intoxicated at the time he made incriminating statements does not render such statements inadmissible where the intoxication does not amount to "mania." *State v. McClure,* 280 N.C. 288, 185 S.E. 2d 693 (1972); *State v. Logner,* 266 N.C. 238, 145 S.E. 2d 867 (1966); *State v. Oxendine,* 24 N.C. App. 444, 210 S.E. 2d 908 (1975).

**[3]** Prior to trial defendant requested and received from the District Attorney a list of the State's witnesses. Defendant argues that the name of the witness Crisp was not on the list and therefore Crisp should not have been allowed to testify. He assigns error to the failure of the court to allow his motion to strike the testimony of Crisp. We see no grounds for defendant's position.

The record shows that the trial court offered defendant sufficient time to prepare for the proposed testimony of Crisp, and that defendant was in fact able to obtain two witnesses, prisoners, whose testimony tended to contradict the witness Crisp. Defendant has not shown bad faith on the part of the District Attorney, or any prejudice, in the omission of Crisp's name from the prior list of witnesses. Furthermore, there is no

common law or statutory right which entitles defendant to a list of witnesses who are to testify against him in a criminal case. *See State v. Carter,* 289 N.C. 35, 41, 220 S.E. 2d 313 (1975), and cases cited therein.

[4] Defendant assigns error to the failure of the trial court to instruct the jury on voluntary manslaughter. However, the only evidence argued by defendant in support of an instruction on this lesser included offense was a statement in Dale Newton's testimony that defendant told her that he and Lemmons had gotten into an argument prior to the killing. This evidence is not sufficient to support a charge on voluntary manslaughter. Evidence of an argument, without some evidence of assault or threatened assault, is insufficient to support a charge as to manslaughter. *State v. Watson,* 287 N.C. 147, 214 S.E. 2d 85 (1975).

[5] We are also unconvinced by defendant's argument that the trial court misstated the necessary elements of second degree murder by failing to instruct the jury that malice is an essential element of second degree murder. The jury was instructed that "if the State has satisfied you from the evidence and beyond a reasonable doubt that the defendant inflicted wounds with a deadly weapon on Rudolph Lemmons, Jr., that caused his death and that he did so intentionally, nothing else appearing, that would constitute murder in the second degree." His Honor further instructed "if the State has satisfied you from the evidence and beyond a reasonable doubt that the defendant unlawfully and *with malice* shot and killed the deceased, Rudolph Lemmons, Jr., then it would be your duty to return a verdict of guilty of murder in the second degree." (Emphasis added.) The charge was proper. *State v. Jones,* 287 N.C. 84, 214 S.E. 2d 24 (1975).

Having reviewed all of defendant's assignments of error we hold that defendant received a fair trial free from prejudicial error.

No error.

Chief Judge BROCK and Judge PARKER concur.