STATE OF NORTH CAROLINA v. JOE WESLEY SPICER, JR; STATE OF NORTH
    CAROLINA v. JEFFERY DALE SPICER

No. 8023SC596

(Filed 6 January 1981)

**1. Criminal Law § 89.8— offer of leniency to State's witness — failure to give
defendant written notice — harmless error**

The district attorney violated G.S. 15A-1054(c) by failing to give defendants writ-
ten notice prior to trial of an offer to permit a State's witness to plead guilty to
misdemeanors in eleven felony cases pending against him in return for his truthful
testimony against defendants where the witness testified that, although no deal had
been made, he nevertheless expected the district attorney to reduce the felony
charges to misdemeanors, and it appeared that the plea bargain offer may have
induced the witness's testimony. However, the district attorney's noncompliance
with the statute did not require suppression of the witness's testimony since the
remedy for failure to comply with the statute was to move for a recess.

**2. Criminal Law § 117.3— State's witness — plea bargain arrangement
—sufficiency of instructions**

The trial judge in a murder case sufficiently informed the jury of a possible
agreement between the district attorney and a State's witness that the witness
would be allowed to plead guilty to misdemeanors in eleven felony cases pending
against him in return for his truthful testimony against defendant.

**3. Criminal Law § 89.1— character evidence — reputation of witness for
truth and veracity**

The trial court properly refused to allow defense counsel to cross-examine a
witness about the general reputation of the State's chief witness for truth and
veracity, since an impeaching character witness may be asked only about the
general reputation or character of another witness.

**4. Criminal Law § 33.4— irrelevant evidence — harmless error**

Although evidence elicited by the prosecutor in cross-examination of defend-
ants' half-brother that he owned two shotguns and three rifles was irrelevant in this
murder prosecution, error in the admission of such evidence was not prejudicial to
defendants.

**5. Criminal Law § 45.1— experimental evidence — lighting conditions at
crime scene**

The trial court in a murder case did not err in admitting evidence of an experi-
ment as to lighting conditions at the murder scene where the evidence offered on
*voir dire* supported the trial court's finding that the conditions at the time of the
experiment were substantially similar to those existing at the time of the alleged
murder, although the evidence on *voir dire* was conflicting as to the conditions on
those two days.

State v. Spicer

### 6. Homicide § 21.7— second degree murder — sufficiency of evidence

The State's evidence was sufficient to support convictions of defendants for second degree murder where it tended to show that the victim, a State's witness, and another person were standing in the front yard of the witness's house at 4:00 a.m.; the witness heard a vehicle approaching the house, and heard one defendant screaming at him; the witness saw such defendant driving a pickup truck on the road in front of the house and saw the second defendant firing a gun from the back of the pickup; after passing the house, the pickup turned around and drove by the house again, at which time the second defendant fired several more shots; and the victim sustained a gunshot wound in the neck and died as a result thereof.

### 7. Homicide § 30.2— murder prosecution — submission of manslaughter not required

The evidence in a murder prosecution was insufficient to support a jury finding that defendants acted in the heat of passion caused by adequate provocation so as to require the court to instruct the jury on the lesser included offense of voluntary manslaughter where there was evidence tending to show that one defendant fired shots from a passing truck at 4:00 a.m. toward a State's witness who was standing in front of his own house and struck and killed the victim who was standing with the witness; there had been discord between the families of defendants and the State's witness prior to the date of the shooting; defendants' mother arrived at a hospital at about 1:30 or 2:00 a.m. prior to the shooting for the treatment of a gunshot wound and had been visited there by defendants; and defendant who was driving the truck yelled out at the time the shots were fired that he would kill the father of the State's witness who was in the house if defendants' mother died, since there was no evidence as to who assaulted defendants' mother, and the events giving rise to the wounds suffered by defendants' mother were considerably removed in time from the events surrounding the shooting death of the victim.

APPEAL by defendants from *Walker, (Hal Hammer), Judge.* Judgment entered 29 November 1979 in Superior Court, WILKES County. Heard in the Court of Appeals 5 November 1980.

Defendants were charged in separate bills of indictment with the murder of Robin Darlene Griffin. The cases were consolidated for trial. From judgment imposed on jury verdicts finding each defendant guilty of second degree murder, defendants appeal.

The State's evidence tends to show that in the early morning of 22 July 1979, Henry A. Minton, Gary Perry and a friend of Perry's, Robin Griffin, were standing in the front yard of Minton's house. Various carport lights and floodlights attached to the front of the house were illuminated. Sometime shortly after 4:00 a.m., Minton heard a vehicle approaching the house, and then heard Joe Spicer, Jr. screaming at him. Minton saw Joe Spicer, Jr. driving his pick-up truck on the road in front of the house, and saw Jeff Spicer firing a gun at

---

State v. Spicer

---

Minton from the back of the pick-up. Upon passing the house, the pick-up turned around and drove by the house again. At this time Jeff Spicer fired several more shots. Robin Griffin, standing with Minton in front of the house, sustained a gunshot wound to the neck and died as a result. Defendants presented alibi evidence. The evidence will be discussed in more detail in the body of the opinion.

*Attorney General Rufus L. Edmisten, by Special Deputy Attorney General John R. B. Matthis and Assistant Attorney General Alan S. Hirsch, for the State.*

*Max F. Ferree, P.A., for defendant Joe Wesley Spicer, Jr.*

*William C. Gray, Jr., for defendant Jeffery Dale Spicer.*

WELLS, Judge.

Defendants' first assignment of error focuses on several instances during trial when the trial judge either questioned witnesses about their testimony or commented about testimony. Defendants contend that by this action, the trial judge erroneously expressed an opinion in the presence of the jury. We have carefully examined the record with respect to this assignment and find no prejudicial conduct on the part of the trial judge.

[1] Defendants next make several assignments of error based upon an offer of charge reduction made by the district attorney to Henry A. Minton for the purpose of securing Minton's truthful testimony against defendants in the case *sub judice.* Defendants first contend that the trial court erred in not requiring the district attorney to comply with G.S. 15A-1054 which authorizes charge reductions in exchange for truthful testimony but provides:

(c) When a prosecutor enters into any arrangement authorized by this section, written notice fully disclosing the terms of the arrangement must be provided to defense counsel, or to the defendant if not represented by counsel, against whom such testimony is to be offered, a reasonable time prior to any proceeding in which the person with whom the arrangement is made is expected to testify. Upon motion of the defendant or his counsel on grounds of surprise or for other good cause or when the interests of justice require, the court must grant a recess.

State v. Spicer

From the record it appears that defense counsel was first apprised of the offer at a bench conference out of the hearing of the jury during the examination of Henry Minton at trial. At that time the district attorney explained that Minton had eleven felony indictments pending, and that in return for Minton's truthful testimony against defendants, the district attorney had offered to let Minton plead guilty to misdemeanors in the eleven charges and not to schedule the cases for trial until Minton's current probation was terminated. Defendants contend that G.S. 15A-1054 was violated because defendants did not receive written notice of this offer. We agree.

The State contends that there was no agreement and that therefore the statute did not apply. Although the district attorney stated that there was no agreement and although at one point in his testimony, Henry Minton stated "I ain't made no deal", the plea bargain may still be enforceable if the offer induced Minton's testimony. *See* Note, *Enforcement of Plea Bargaining Agreements,* 51 N.C.L. Rev. 602, 609 (1973). Promises by prosecutors of assistance or leniency, even if tentative, might be interpreted by a witness as contingent upon the nature of his testimony. *See Campbell v. Reed,* 594 F.2d 4, 7 (4th Cir. 1979); *State v. Edwards,* 37 N.C. App. 47, 48-49, 245 S.E. 2d 527, 528 (1978). Although Minton denied that a deal had been made, he nevertheless testified that he expected the district attorney to drop the felony charges to misdemeanors if Minton pled guilty to them. Minton's credibility as a witness was an important issue in the prosecution of defendants and evidence of any understanding or agreement with the district attorney for leniency was relevant to Minton's credibility. *See Campbell v. Reed, supra.*

Although the district attorney should have complied with G.S. 15A-1054(c), such non-compliance does not require suppression of Minton's testimony. *State v. Lester,* 294 N.C. 220, 229, 240 S.E. 2d 391, 398-99 (1978); *State v. Edwards, supra.* The defendants' remedy for failure to comply with the statute was to move for a recess. G.S. 15A-1054(c). In this case, defendants did not request a recess and did not except on the basis of failure to grant a recess. Defendants have not shown any prejudice by the lack of the required notice, and this assignment is overruled. *State v. Lester, supra.*

**[2]**  Defendants also assign error to the failure of the trial judge to inform the jury of the full extent of the understanding between the district attorney and Henry Minton, to the trial judge's refusal to allow all of defendant counsel's questions when cross-examining Minton about the offer of leniency, and to the trial judge's failure to adequately instruct the jury about the purported deal. We disagree and hold that the jury was fully informed of the possible agreement between the district attorney and Minton prior to the time it began deliberations. *See State v. Cousins,* 289 N.C. 540, 545, 223 S.E. 2d 338, 342 (1976). Counsel for defendants cross examined Minton extensively on the specific crimes charged under the indictments and on "the kind of deal" Minton had with the district attorney. After questioning Minton about the crimes charged, defense counsel would inquire, "What kind of deal do you have with the prosecutor in return for your testimony here today as to that?" Minton's repeated response was "I told you I could plead guilty to a misdemeanor." In view of the lengthy and repetitious cross examination of Minton on this issue, we cannot say that the trial judge erred in sustaining objections to three of the approximately forty questions that defense counsel propounded. *See State v. Abernathy,* 295 N.C. 147, 151-52, 244 S.E. 2d 373, 377 (1978); *State v. McPherson,* 276 N.C. 482, 487, 172 S.E. 2d 50, 53-54 (1970). In holding that the jury was adequately informed of the possible agreement of charge reduction, we note that the trial judge charged the jury in part:

> [T]he Court charges you that as to any arrangements that were made, if any were made, and there is some evidence that the witness, Henry Allen Minton, was testifying under some understanding for a charge reduction in return for his testimony in these cases. If you find that Henry Minton testified in whole or in part for this reason, you should examine his testimony with great care and caution in deciding whether or not to believe it.

Each of defendants' assignments of error regarding Minton's possible agreement with the district attorney is overruled.

**[3]**  Defendants' next assignment of error relates to the following exchange in the record, when Kyle Gentry, the sheriff who investigated the shootings, was testifying:

CROSS EXAMINATION by Mr. Gray [counsel for defend-

State v. Spicer

ant Jeff Spicer]:

[Gentry:] I have known Mr. Mintón for three or four years. Yes, sir, since before I was elected Sheriff.

Q. And, Sheriff Gentry, would it be a fair statement that you believe very little of what Henry Minton says?

MR. ASHBURN [District Attorney]: OBJECTION.

COURT: OBJECTION SUSTAINED.

Q. Sheriff, what's the general reputation of Henry Minton as to his truth and honesty?

MR. ASHBURN: OBJECTION unless he can say he knows it.

COURT: Well, yes.

MR. FERREE: Cross examination.

COURT: Well, one thing you're limiting it to a specific person, if he knows his general character and reputation he can say so. If he wants to elaborate he may say so. That's fundamental. OBJECTION SUSTAINED.

Q. Sheriff Gentry, do you know the general reputation and character of Henry Minton here in the community in which he lives.?

A. Yes, I do.

Q. And what is that?

A. It's not good.

Q. No further questions.

Defendants assign as error the trial court's refusal to allow defense counsel to cross examine Gentry about Henry Minton's general reputation for truth and veracity. This contention has no merit. The established rule allows only two questions to be asked of an impeaching character witness: (1) whether he knows the general reputation and character of the party, and (2) what that general reputation or character is. The witness may amplify or qualify his answers to the latter question with regard to specific virtues or vices of the party but counsel offering the witness may not suggest that the witness do so. *State v. Abernathy, supra,* at 166-67, 244 S.E. 2d at 385-86; *State v. Hairston,* 121 N.C. 579, 28 S.E. 492 (1897). The trial judge's rulings with regard to this issue were proper.

**[4]** Defendants' next assignment of error regards the State's cross examination of one of defendants' witnesses, Ted Porter, the half-brother of defendants who testified as to the defendants' whereabouts prior to 4:00 a.m. on 22 July 1979. The district attorney asked Porter how many shotguns and rifles Porter owned. Defense counsel's objection was overruled. Porter answered that he owned two shotguns and three rifles. Defendants contend that such evidence was immaterial and had the sole effect of exciting the prejudice of the jurors. The admission of irrelevant evidence is ordinarily considered harmless error and the burden is upon appellant to show that he was prejudiced. *State v. Atkinson* 298 N.C. 673, 683, 259 S.E. 2d 858, 864 (1979). Although we agree that the disputed evidence was not relevant, defendants have not carried their burden of showing a reasonable possibility that had it not been for this irrelevent evidence's admission, a different result would have ensued. *State v. Atkinson, supra,* at 684, 259 S.E. 2d at 865; G.S. 15A-1443(a). This assignment of error is overruled.

**[5]** Defendants' next three assignments of error concern the admission as experimental evidence of a lighting experiment. On 31 July 1979 at approximately 4:00 a.m., Henry Minton, Kyle Gentry and two other persons, stood in the front yard of Minton's house with the various carport lights, and floodlights attached to the front of the house illuminated. Steve Cabe, a special agent of the North Carolina State Bureau of Investigation, drove by in a pick-up truck. Pictures were taken. At the *voir dire* examination regarding the experiment there was testimony that the weather conditions on the nights of 22 July and 31 July were very similar, and that the houselights had not been altered between the two dates. Defendants presented evidence tending to show that the weather was foggy on the night of 22 July but clear on the night of 31 July. Subsequent to the *voir dire* examination, the trial judge found specific facts regarding the weather on the two dates and that the conditions existing when the experiment was performed were substantially the same as on the date at issue so that proper evidence with regard to the experiment could be introduced.

Defendants contend the trial judge committed error as follows: (a) in allowing before the jury the lighting experiment; (b) in failing to make proper findings at the conclusion of the *voir dire* examination, and (c) in failing to strike the experiment. The trial court is allowed a broad latitude of discretion in the admission of experimental evidence,

State v. Spicer

especially with reference to the similarity of conditions existing at the time of the crime and conditions at the time of the experiment. *See State v. Carter,* 282 N.C. 297, 300, 192 S.E. 2d 279, 281 (1972). We hold that in this case the trial judge did not abuse his discretion in his rulings concerning the experiment. *See State v. Jones,* 287 N.C. 84, 98-99, 214 S.E. 2d 24, 34-35 (1975). The evidence offered on *voir dire* supported the trial judge's findings of fact, and in our opinion the trial judge was not "too wide of the mark" in determining that the conditions during the experiment were substantially similar to those surrounding the alleged homicide. *State v. Jones, supra,* at 99, 214 S.E. 2d at 34. Defendants' three assignments of error concerning this experiment are overruled.

[6] Defendants next assign error to the trial judge's denial of defendants' motions for judgment as of nonsuit. Defendants contend that there was not sufficient evidence of each essential element of the offense of second degree murder or that defendants had committed that offense. In considering defendants' motions, the evidence must be considered in the light most favorable to the State and the State must be given the benefit of every reasonable inference to be drawn therefrom. *State v. Clark,* 300 N.C. 116, 125, 265 S.E. 2d 204, 210 (1980). If there is direct or circumstantial evidence, or a combination of both, from which the jury could find that defendants committed the offense charged, the motion for judgment as of nonsuit must be denied. *State v. Jones, supra,* at 101, 214 S.E. 2d at 36. Murder in the second degree is the unlawful killing of a human being with malice but without premeditation and deliberation. *State v. Wilkerson,* 295 N.C. 559, 577, 247 S.E. 2d 905, 915 (1978); *State v. Wrenn,* 279 N.C. 676, 681, 185 S.E. 2d 129, 132 (1971). The intentional use of a deadly weapon as a weapon, when death proximately results from such use, gives rise to the presumptions that (1) the killing was unlawful, and (2) done with malice. *State v. Duboise,* 279 N.C. 73, 81, 181 S.E. 2d 393, 398 (1971). *See also State v. Wrenn, supra.* Here, all the evidence tends to show that the defendants were engaged in a deliberate course of conduct which included the intentional firing of a gun a number of times in the direction of the deceased girl, the bullets from such shots hitting her and another person. Such evidence was clearly sufficient to overcome defendants' motions of nonsuit and to justify the jury's verdict of guilty of second degree murder. This assignment is without merit and is overruled.

[7] Defendants' final assignment of error concerns the failure of the

trial judge to instruct the jury on the lesser included offense of voluntary manslaughter. When there has been some evidence presented of defendant's guilt of a lesser included offense, defendant is entitled to have the question submitted to the jury even if there was no specific prayer for such instruction. *State v. Bell,* 284 N.C. 416, 419, 200 S.E. 2d 601, 603 (1973). Voluntary manslaughter is the unlawful killing of a human being without malice, and without premeditation or deliberation. *State v. Wilkerson, supra,* at 577, 247 S.E. 2d at 915, *quoting with approval State v. Wrenn, supra,* at 681, 185 S.E. 2d at 132. A killing is without malice if the one who kills acted while under the influence of passion or in the heat of blood produced by adequate provocation. *State v. Williams,* 296 N.C. 693, 701, 252 S.E. 2d 739, 744 (1979). Defendants contend that there was some evidence that defendants acted in the heat of passion caused by *adequate provocation.*

There was evidence in the record that there had been discord between the Minton and Spicer familes prior to 22 July. The evidence also indicated that the defendants' mother arrived at Wilkes Hospital at about 1:30 or 2:00 on the morning of 22 July for treatment of a gunshot wound. Various friends and members of her family, including defendants, visited defendants' mother at the hospital in the early morning hours. The record also contained the testimony of Henry Minton's father who was inside the Minton house at the time of the crime at issue. Minton's father testified that at that time he heard shots being fired in front of the house.

Q. All right, what occurred then?
A. Joe, Jr. said, "Minton," said, "come on out here," said, "I'm going to blow your God-damn brains out," and he kept saying, "Open that door if you don't believe I'll blow your brains out," and he said that, uh, "If my mother dies, you better believe I will kill you."

Defendants assert that this testimony is evidence that defendants acted in the heat of passion.

Defendants' argument is grounded in the proposition that "heat of passion," *i.e.*, rage, anger, hatred or furious resentment rendering the mind incapable of cool reflection, is sufficient to show lack of malice. Mere "heat of passion" is not enough. Such "heat of passion" must arise upon reasonable or adequate provocation, which in turn can only arise under circumstances amounting to an assault or a

State v. Spicer

threatened assault. *State v. Williams, supra,* at 702, 252 S.E. 2d at 745; *State v. Watson,* 287 N.C. 147, 156, 214 S.E. 2d 85, 90-91 (1975); *see also State v. Hamrick,* 30 N.C. App. 143, 148, 226 S.E. 2d 404, 407 (1976), *disc. rev. denied,* 290 N.C. 780, 229 S.E. 2d 35 (1976). Here, while there is evidence that defendants' mother may have been assaulted, there is no evidence whatsoever as to who may have assaulted her. Furthermore, the evidence is clear that the events giving rise to defendants' mother's wounds were considerably removed in time from the events surrounding the death of Robin Darlene Griffin. Accepting, *arguendo,* that an assault or threatened assault on a close relative may provide adequate or legal provocation to arouse heat of passion,[1] the evidence here does not show "anger suddenly[2] aroused by provocation which the law deems adequate to dethrone reason temporarily and to displace malice." *State v. Ward,* 286 N.C. 304, 312, 210 S.E. 2d 407, 413 (1974), *modified,* 428 U.S. 903, 49 L.Ed. 2d 1207, 96 S.Ct. 3206 (1976). "The law extends its indulgence to a transport of passion justly excited and to acts done before reason has time to subdue it; the law does not indulge revenge or malice, no matter how great the injury or grave the insult which first gave it origin." *State v. Ward, supra,* at 313, 210 S.E. 2d at 414. This assignment is without merit and is overruled.

Our examination of the entire record discloses that defendants received a fair trial, free from prejudicial error.

No error.

Judges VAUGHN and MARTIN (Robert) concur.

---

[1] *State v. Edmundson,* 209 N.C. 716, 184 S.E. 504 (1936) (assault on brother of accused).

[2] As to the aspect of "sudden" provocation, *see also State v. Patterson,* 297 N.C. 247, 253, 254 S.E. 2d 604, 609 (1979) and *State v. Hankerson,* 288 N.C. 632, 650, 220 S.E. 2d 575, 584 (1975), *reversed on other grounds,* 432 U.S. 233, 53 L.Ed. 2d 306, 97 S.Ct. 2339 (1977).