STATE OF NORTH CAROLINA v. LLOYD JAMES MORGAN

No. 8229SC384

(Filed 15 February 1983)

**Criminal Law § 86.8— failure to give defendant notice of a grant of immunity to State's witness — prejudicial error**

    In a prosecution for second degree burglary where the only evidence against the defendant was the testimony of the State's witness, the failure of the prosecution to provide defendant with advance notice of the grant of immunity given the witness pursuant to G.S. 15A-1054(c), its allowance of the witness's denials that such immunity existed to stand uncorrected, and the trial court's failure to instruct the jury to consider the testimony of the immunized witness as it would consider the testimony of any other interested witness, pursuant to G.S. 15A-1052(c), resulted in manifest prejudice to the defendant requiring a new trial.

APPEAL by defendant from *Howell, Judge.* Judgment entered 27 March 1981 in Superior Court, TRANSYLVANIA County. Heard in the Court of Appeals 18 October 1982.

The defendant, Lloyd James Morgan, was indicted for second degree burglary. The indictment alleged that the defendant broke and entered the dwelling house of Mr. Billie Trotter in Lake Tox-

away, North Carolina at approximately 11:00 p.m., on 12 December 1979. The jury returned a verdict finding the defendant guilty as charged. The trial court entered judgment and commitment on the jury's verdict. From the verdict, judgment and commitment, defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General Richard L. Griffin, for the State.*

*Appellate Defender Adam Stein, for defendant appellant.*

JOHNSON, Judge.

By his assignments of error defendant argues that (1) the prosecution's failure to give defendant notice of a grant of immunity to State's witness Harry Shelton, as required by G.S. 15A-1054(c), deprived defendant of his rights to confrontation and due process of law and (2) the trial court's failure to instruct the jury on the credibility of a witness who has been granted immunity, as required by G.S. 15A-1052 was prejudicial error. Our review of the record on appeal and assignments of error discloses prejudicial error requiring a new trial.

At trial, all of the evidence linking the defendant to the Trotter break-in came from the testimony of Harry Welch Shelton, a purported accomplice in the burglary. The gist of Shelton's testimony was that defendant and a man named J. C. Clayton came to his house on 12 December 1979 at about 9:00 or 10:00 p.m.; that they rode around in Clayton's car talking about breaking into Trotter's residence while Trotter was at work; that the three of them broke into Trotter's house at about 11:00 p.m. after first determining that he was at work; that they stole silver, jewelry and coins; and that they went to the defendant's residence where they divided up the stolen items.

The defendant testified in his own defense. He denied participation in the break-in of Trotter's residence and denied that he received any of the fruits of that crime. He testified that he had known Shelton for about four years, and did not know Clayton until they met in jail upon both being charged with the Trotter break-in.

The balance of the testimony at trial went primarily to either enhance or attack the credibility of Shelton and of the defendant.

Both Shelton and the defendant had prior criminal convictions. The State offered a prior statement made by Shelton to a Transylvania County Sheriff's Detective, Hubert Brown, as corroboration.

Detective Brown had investigated the Trotter break-in. On cross-examination, Brown admitted that he never recovered any of the stolen items and did not obtain any fingerprints at the crime scene. The defendant was never questioned regarding the Trotter break-in. Two or three months after the break-in Harry Shelton was questioned. Shelton denied having any part in it at that time. The Sheriff's office had no physical evidence to tie Shelton with the crime; however, Shelton was questioned again a number of times about the Trotter break-in and other crimes in Transylvania County. Detective Brown testified that the Sheriff's office was interested in having Shelton turn State's evidence. Eventually, Shelton was charged with a number of felony offenses. After an altercation with a man named Howard Owen, late in December 1980, Shelton agreed to turn State's evidence against other individuals who were involved in criminal cases with him. In January 1981, Shelton made a statement to Detective Brown admitting his participation in the Trotter break-in and implicating defendant and J. C. Clayton. Defendant was then indicted for the Trotter break-in on 27 January 1981.

The record does not show that the prosecution informed defendant or his counsel prior to trial, either orally or in writing, of the existence or terms of the agreement between the prosecution and Shelton whereby Shelton was granted immunity in exchange for his testimony. Defense counsel's attempts to elicit evidence of an agreement with the prosecution from Harry Shelton on cross-examination proved fruitless, as Shelton repeatedly denied the existence of such an agreement. During the course of Detective Brown's cross-examination, evidence of the existence of a grant of immunity to Harry Shelton was revealed. The agreement actually entered into by the State granted witness Shelton use immunity with respect to his testimony against the defendant and others.

> The undersigned Assistant District Attorney (Alan C. Leonard) for the 29th Judicial District hereby grants unto Harry Welch Shelton use immunity with respect to any state-

ment that he may make in the prosecution of cases now pending in the Superior Court of Transylvania County against the following persons: Randy Orr, Lloyd Morgan, Harold Owen, Howard Owen, Gerald David Owen, Jerry Steve Revis, Ricky Lynn Galloway, Oral Randall Eubanks, J. C. Clayton, Steve Hamilton Shipman, Henry Terrill Queen and Stanley Morgan.

The record on appeal reveals that the document reflecting this agreement was filed with the clerk of the trial court on the day the case was submitted to the jury, 27 March 1981 at 3:00 p.m., *after* the jury retired to deliberate and before it returned its verdict.

The trial court's only reference to Shelton's testifying under a grant of immunity came during its charge to the jury as a part of the court's statement of defendant's evidence.

Article 61 of the Criminal Procedure Act, G.S. 15A-1051, *et seq.*, "formalizes and gives statutory sanction to the granting of immunity from prosecution." Eagles, *Articles 52 and 53 of Subchapter 9 and 10 of the Code of Pretrial Criminal Procedure—Motions Practice, Motions to Suppress, Pleas, Plea Arrangements and Immunity,* 10 Wake Forest L. Rev. 517, 535 (1974). It also provides a series of safeguards to protect against the "reputed unreliability of witnesses who are receiving *quid pro quo* for their testimony." *Id.* at 537. The separate provisions of Article 61 establish a pretrial and trial procedure designed to provide full and adequate prior disclosure of the prosecution's arrangement with its witness to the Attorney General and trial court, G.S. 15A-1052; to defense counsel or to the unrepresented defendant, G.S. 15A-1054(c); and to the jury, G.S. 15A-1052(c) and G.S. 15A-1055. These safeguards are aimed at ensuring that the jury be made aware that the witness is testifying under a grant of immunity or some other arrangement. The agreement entered into by the prosecution with its witness Harry Shelton is precisely the type of agreement covered by Article 61. Thus, the full panoply of its procedures should have been followed to protect the defendant's right to a fair trial.

G.S. 15A-1052(c) requires that the judge in a jury trial "inform the jury of the grant of immunity and the order to testify prior to the testimony of the witness under the grant of immuni-

ty." At no point during Harry Shelton's testimony, either on direct or cross-examination, was the jury informed that the witness was to receive a grant of immunity from the State in exchange for his testimony. Thus, defendant was deprived of the important right to have the jurors alerted of the need to listen to Shelton's testimony with extra care and caution.

With regard to the prosecution's pretrial disclosure duty, G.S. 15A-1054(c) provides:

> When a prosecutor enters into any arrangement authorized by this section, written notice fully disclosing the terms of the arrangement must be provided to defense counsel, or to the defendant if not represented by counsel, against whom such testimony is to be offered, a reasonable time prior to any proceeding in which the person with whom the arrangement is made is expected to testify.

The use immunity granted to Harry Shelton is clearly among the "arrangements" with a witness within the scope of G.S. 15A-1054. Therefore, the prosecution was under a duty, *a reasonable time prior to the trial*, to provide written notice disclosing the terms of the agreement with the witness. The prosecution's failure to provide advance notice of the grant of immunity is a clear violation of defendant's statutory discovery rights.

The State argues that the relief provided by G.S. 15A-1054(c) for the State's statutory failure is for defendant to compel the granting of a recess.[1] Further, that defendant, having failed to ask for a recess at trial, is precluded from claiming prejudicial error on appeal.

This Court has held that the State's failure to comply with G.S. 15A-1054(c) does not require suppression of the witness' testimony where the defendant is not prejudiced by the lack of required notice, *State v. Spicer*, 50 N.C. App. 214, 273 S.E. 2d 521 (1981). In *Spicer* the witness was granted charge reductions in exchange for his testimony. The defendants had failed to request a recess or except to the failure to grant a recess. On cross-exami-

---

1. G.S. 15A-1054(c). Upon motion of the defendant or his counsel on grounds of surprise or for other good cause or when the interests of justice require, the court must grant a recess.

nation the witness denied that a "deal" had been made, but nevertheless testified that he expected charge reductions in consideration of testimony. Inasmuch as the jury was fully informed of the existence of an agreement while the witness was testifying, this Court concluded that the defendants had failed to show any prejudice by the lack of required notice. *See also State v. Ginn,* --- N.C. App. ---, 296 S.E. 2d 825 (1982) where the defendant's statutory discovery rights were adequately protected by production of the plea agreement during trial and its utilization by defense counsel during cross-examination of the State's witness.

The record in the case *sub judice* demonstrates that defendant was prejudiced by the State's failure to comply with the advance notice requirement of G.S. 15A-1054(c). The defendant was not informed of the immunity agreement in advance of trial. On cross-examination, the witness Shelton denied repeatedly that he discussed receiving assistance in the disposition of charges pending against him if he would testify for the State, denied that any promises had been made to him and denied that he believed he would benefit by his testimony in any way.

Q. Have you had conversations with Mr. Brown and Mr. Stroup regarding your testimony here today the jist (sic) of which is that if you will testify that they will assist you in disposing of charges that are now pending against you?

A. No sir.

\*     \*     \*

Q. Have you had a conversation subsequent to that time, the jist (sic) of which was if you will testify that the State will not prosecute you in this matter?

A. No sir.

Q. Have not?

A. No sir.

Q. No promises have been made to you?

A. No sir.

\*     \*     \*

Q. Mr. Shelton, do you believe that your testimony today will assist you in any matters that are now pending against you?

THE ASSISTANT DISTRICT ATTORNEY: OBJECTION

THE COURT: OVERRULED

A. No sir.

Q. Mr. Shelton, Mr. Brown or Mr. Stroup has never suggested to you that if you testify in this matter that you will derive any benefit with regard to the charges pending against you?

THE ASSISTANT DISTRICT ATTORNEY: OBJECTION

A. No sir.

THE COURT: OVERRULED

Q. You're here as a—doing your civic responsibility, is that correct, sir?

THE ASSISTANT DISTRICT ATTORNEY: OBJECTION

THE COURT: SUSTAINED.

After witness Shelton had been excused, Detective Brown testified. During cross-examination evidence of the immunity agreement was elicited from Detective Brown.

Q. Did you indicate to Mr. Shelton—let's go back to the meeting that occurred on the 3rd of November, Mr. Brown. You had been before the Grand Jury on October 6th in order to obtain Indictments against Mr. Shelton for the four break-ins of Laura's Restaurant, Champion Timberland and so forth?

A. I had appeared, yes sir.

Q. And true bills had come down, is that correct?

A. Yes sir, they had.

Q. So outstanding at your second or third and fourth and fifth meetings were the four felony indictments against Mr. Shelton, is that correct?

A. There were indictments, yes sir.

Q. And he knew that, did he not?

THE ASSISTANT DISTRICT ATTORNEY: OBJECTION

A. Yes he knew it.

*     *     *

Q. Mr. Brown, did you not tell him that you would see what you could do?

A. No, I didn't tell him I'd see what I'd do. I picked up the telephone, counsellor, and I called the D.A.'s office and the D.A. talked to him, Mr. Keith Melton.

\* \* \*

Q. So there is an arrangement between the District Attorney's Office and Mr. Shelton with regard to the disposition of the four felonies?

A. No sir, not in disposition of four felonies.
Q. With regard to what?

A. In regard to the cases Mr. Shelton turned State's evidence in. He was given immunity from prosecution by the D.A.'s office in those matters.

We note that G.S. 15A-1055(a) provides express statutory authority for defendant's counsel to examine an immunized witness on the witness stand "with respect to that grant of immunity or arrangement," and for introduction of evidence or examination of other witnesses concerning the grant of immunity or arrangement. Subsection (b) expressly authorizes argument to the jury with respect to the impact of a grant of immunity or arrangement under G.S. 15A-1054 upon the credibility of a witness.[2]

Shelton's credibility as a witness was a material issue in the prosecution of defendant. *State v. Spicer, supra.* The State produced virtually no evidence other than Shelton's testimony of defendant's involvement in the Trotter break-in. The existence and terms of a grant of use immunity or any agreement with the district attorney was relevant to Shelton's credibility and the jury had a right to know about it. The importance of cross-examination regarding the conditions under which the witness is

---

2. G.S. 15A-1055(a). Notwithstanding any other rule of evidence to the contrary, any party may examine a witness testifying under a grant of immunity or pursuant to an arrangement under G.S. 15A-1054 with respect to that grant of immunity or arrangement. A party may also introduce evidence or examine other witnesses in corroboration or contradiction of testimony or evidence previously elicited by himself or another party concerning the grant of immunity or arrangement. (b) A party may argue to the jury with respect to the impact of a grant of immunity or an arrangement under G.S. 15A-1054 upon the credibility of a witness.

testifying is underscored by the statutory authorization of G.S. 15A-1055.

The situation at defendant's trial was unlike that presented in *State v. Spicer, supra,* in that Shelton denied that he would benefit from his testimony, and unlike *State v. Ginn, supra,* in that defense counsel never received a written copy of the grant of immunity. Defense counsel was thereby prejudicially hampered in his ability to effectively cross-examine Shelton on the witness stand about the terms of his agreement with the State due to the State's failure to comply with G.S. 15A-1054(c).

It is clear that an understanding existed between the prosecution and the witness Shelton that he would receive some form of immunity from prosecution in connection with his own criminal activity if he testified against defendant. Shelton's denials that his testimony would assist him in matters pending against him or that he would benefit in any way by his testimony were substantively false. The prosecution knew the situation but objected during cross-examination about it. The denials were then allowed to stand uncorrected by the prosecution. Knowing use by the prosecution of materially false testimony violates a defendant's right to a fair trial. This is true whether the evidence is solicited by the prosecutor or is simply allowed to stand uncorrected when it appears. *Giglio v. United States,* 405 U.S. 150, 31 L.Ed. 2d 104, 92 S.Ct. 763 (1972). "The principle that the State may not knowingly use false evidence applies where such evidence goes only to the credibility of a witness, since '[t]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence.'" *Campbell v. Reed,* 594 F. 2d 4, 7 (4th Cir. 1979), *quoting Napue v. Illinois,* 360 U.S. 264, 269, 3 L.Ed. 2d 1217, 1221, 79 S.Ct. 1173, 1177 (1959). *See also Gunning v. Cousin,* 452 F. Supp. 916 (W.D. N.C. 1978).

In *Napue v. Illinois* the Supreme Court held that failure of the prosecutor to correct the testimony of the witness which he knew to be false denied the defendant due process of law in violation of the fourteenth amendment. In *Giglio v. United States, supra,* the government's case depended almost entirely on the testimony of an unindicted co-conspirator who falsely testified that he had not been promised leniency in exchange for his testimony. The prosecution failed to correct this testimony. The

fact that the agreement which had been made was not made with the district attorney who actually prosecuted the case at trial was not considered controlling. The Supreme Court held that the witness' credibility was a material issue and the prosecution's failure to present all material evidence to the jury constituted a denial of due process and required a new trial. In *Campbell v. Reed, supra,* the Fourth Circuit found a denial of due process where the State had initially failed to give the defense counsel advance notice of a plea arrangement with its witness in violation of G.S. 15A-1054(c), and subsequently allowed its witness' denial that a plea arrangement had been made with the State to stand uncorrected.

> Viewing the record as a whole we conclude that the jury's verdict might have been different had it known the full extent of Miller's motivation to testify against Campbell. As we observed in *United States v. Sutton,* 542 F. 2d 1239, 1243 (4th Cir. 1976), "here the prosecution allowed a false impression to be created at trial when the truth would have directly impugned the veracity of its key witness."

594 F. 2d at 8. Much the same can be said of the case *sub judice.* The fact that the jury learned of the existence of a grant of immunity during cross-examination of Detective Brown is not sufficient to turn what was an otherwise tainted trial into a fair one. *Napue v. Illinois, supra,* 360 U.S. at 268, 3 L.Ed. 2d at 1221, 79 S.Ct. at 1173. Defendant was prejudicially deprived of his statutory right to pretrial disclosure of the immunity agreement and deprived of his right to due process of law by the false impression created at his trial.

In addition, these errors were compounded by the trial court's failure to give an interested witness instruction to the jury. G.S. 15A-1052(c) provides that when a witness testifies under a grant of immunity, "during the charge to the jury, the judge must instruct the jury as in the case of interested witnesses." The trial court's only reference to Shelton's grant of immunity came during the statement of the defendant's evidence. The trial court stated it was defendant's contention that the evidence tended to show that Shelton "was given some type of immunity by the District Attorney's office with respect to a charge pending against him." No further instruction was given as

to Shelton's status as an interested witness or how to regard the testimony of a witness receiving *quid pro quo* for his testimony. The trial court's failure to adequately instruct the jury concerning the credibility of the State's witness is prejudicial error.

In conclusion, the failure of the prosecution to provide advance notice of the grant of immunity pursuant to G.S. 15A-1054(c), its allowance of the witness' denials that such immunity existed to stand uncorrected and the trial court's failure to instruct the jury to consider the testimony of the immunized witness as it would consider the testimony of any other interested witness, pursuant to G.S. 15A-1052(c) resulted in manifest prejudice to the defendant requiring a

New trial.

Judge HILL concurs.

Judge ARNOLD dissents.