STATE OF NORTH CAROLINA v. SAM COLVIN

No. 8713SC971

(Filed 3 May 1988)

1. **Criminal Law § 91— speedy trial—time between filing change of venue motion and disposition—time properly excluded**

    When a motion for change of venue is heard within a reasonable time after it is filed and the State does not delay the hearing for the purpose of thwarting the speedy trial statute, the time between the filing of the motion and its disposition is properly excluded in computing the time within which a trial must begin, and the time required to transfer records between counties is a part of the disposition of the motion. N.C.G.S. § 15A-701(b)(1)d.

2. **Criminal Law § 79.1— co-conspirator's testimony as to willingness to participate in crime—admissibility before conspiracy established**

    In a prosecution of defendant for conspiracy to commit robbery with a dangerous weapon and robbery with a dangerous weapon, the trial court did not err in allowing a co-conspirator to testify about a conversation concerning his own willingness to participate in the robbery, since the acts and declarations of a co-conspirator are admissible before the *prima facie* case of conspiracy is sufficiently established, but the prosecution must properly prove the existence of the *prima facie* case of conspiracy before the close of the State's evidence in order to have the benefit of the acts and declarations; and the State in this case sufficiently established the elements of a conspiracy and de-

State v. Colvin

fendant's involvement in it where the evidence tended to show that defendant was present when two others discussed robbing a bank, agreed to help, and engaged in elaborate preparations to rob the bank.

**3. Criminal Law § 79— co-conspirator's testimony as to what defendant meant— admissibility**

In a prosecution for conspiracy to commit robbery with a dangerous weapon, a co-conspirator could properly testify that defendant meant he was going to rob a bank when he said he was going to "do it," since the statement was admissible as a lay opinion pursuant to N.C.G.S. § 8C-1, Rule 701.

**4. Criminal Law § 86.8— co-conspirator's plea arrangement—admissibility of evidence**

The trial court did not err in allowing the introduction of a letter concerning a co-conspirator's plea arrangement with the State. N.C.G.S. § 15A-1055(a).

**5. Conspiracy § 6— conspiracy to commit robbery—sufficiency of evidence**

In a prosecution for conspiracy to commit robbery with a dangerous weapon, evidence was sufficient to be submitted to the jury where a co-conspirator testified that defendant stated he was going to "do it"; the co-conspirator stated that defendant meant he was going to rob the bank; defendant accepted from his brother a jumpsuit, mask, gloves, and sawed-off shotgun for use in the robbery; defendant rode with his brother and a co-conspirator to town where he and the co-conspirator got out and broke into a house behind the bank; and while in the house they changed into clothes provided by the brother and waited there for a signal from him before entering the bank.

**6. Criminal Law § 138.34— limited mental capacity—failure to find as mitigating factor**

The trial court did not err in failing to find defendant's limited mental capacity as a mitigating factor where the reports submitted by defendant established his borderline intelligence, but there was no evidence that defendant was unable to understand the consequences of his behavior so as to significantly reduce his culpability for the offense. N.C.G.S. § 15A-1340.4(a)(2).

APPEAL by defendant from *Beaty, Judge.* Judgment entered 30 April 1987 in Superior Court, COLUMBUS County. Heard in the Court of Appeals 8 March 1988.

*Attorney General Lacy H. Thornburg by Assistant Attorney General William F. Briley for the State.*

*William E. Wood for defendant appellant.*

COZORT, Judge.

Defendant was charged and convicted of conspiracy to commit robbery with a dangerous weapon and robbery with a dangerous weapon. From a judgment sentencing him to twenty years for

the robbery, and three years consecutive for the conspiracy, defendant appeals. We hold that defendant received a fair trial, free of prejudicial error.

The State's evidence consists primarily of the testimony of John Earl Carthens, a co-conspirator and participant in the robbery, who testified under a plea arrangement with the State. Carthens testified that on Sunday, 23 February 1986, he and Greg Colvin, defendant's brother, went to the Colvin home in Bladen County. While there, Greg initiated a conversation about robbing the bank in Tarheel, North Carolina. Carthens stated that, "I told him I'd help him out," and that defendant said, "he was gonna do it, help his brother out."

The next day, 24 February 1986, Greg Colvin brought Carthens and defendant a jumpsuit, army pants, gloves, masks, and two sawed-off shotguns. The three men then rode together to Tarheel where Greg let Carthens and defendant out, and they broke into a house behind the bank. There they changed into the clothes provided by Greg and waited for a signal from him to enter the bank. Upon receiving the signal, the two entered the bank with the shotguns and told the bank tellers that it was a stickup. After stuffing a bag and pillowcase with money, they fled the bank on foot and ran into the woods throwing off their disguises as they went.

On cross-examination there was some discrepancy in Carthens' testimony as to whether defendant was present during the conversation about robbing the bank or if he even heard the conversation.

When defendant took the stand, he testified that he did not recall talking with Carthens on 23 February 1986, and that he never participated in a discussion about robbing a bank. He also testified as to his activities during the day of 24 February 1986, and stated that he did not participate in or have any knowledge of a bank robbery.

The jury found defendant guilty of both conspiracy to commit robbery with a dangerous weapon and of robbery with a dangerous weapon. He was then sentenced to a twenty-year term for the robbery and a three-year term for the conspiracy, which terms were to run consecutively. From this judgment, defendant appeals.

**[1]** Defendant argues that the trial court erred in denying his motion to dismiss for failure to comply with the requirements of the Speedy Trial Act. We disagree.

N.C. Gen. Stat. § 15A-701(a1) provides in part:

The trial of the defendant charged with a criminal offense shall begin within the time limits specified below:

(1) Within 120 days from the date the defendant is arrested, served with criminal process, waives an indictment, or is indicted, whichever occurs last; . . .

N.C. Gen. Stat. § 15A-701(b) provides that in computing this 120-day period, the following periods are excluded:

(1) Any period of delay resulting from other proceedings concerning the defendant including, but not limited to, delays resulting from:

. . . .

d. Hearings on any pretrial motions or the granting or denial of such motions.

The period of delay under this subdivision must include all delay from the time a motion or other event occurs that begins the delay until the time a judge makes a final ruling on the motion or the event causing the delay is finally resolved; . . .

In the case below, defendant filed a motion for change of venue on 23 April 1986. Although the motion to transfer the case from Bladen to Columbus County was granted on 7 August 1986, the order was not filed until 20 August 1986, and defendant's files did not reach the Clerk of Superior Court of Columbus County until 25 August 1986. The trial judge found that the time from defendant's filing of the motion until 25 August 1986 was excluded from the time requirements of the Speedy Trial Act. Defendant contends that the case was disposed of on 7 August 1986, when the motion was granted, and that the time between 7 August and 25 August 1986 should not be excluded from the time limits of the Speedy Trial Act. If this time is not excluded, then the 120-day time limit is exceeded.

State v. Colvin

When the motion for change of venue is heard within a reasonable time after it is filed and the State does not delay the hearing for the purpose of thwarting the speedy trial statute, the time between the filing of the motion and its disposition is properly excluded in computing the time within which a trial must begin. *State v. Overton*, 60 N.C. App. 1, 298 S.E. 2d 695 (1982), *disc. rev. denied and appeal dismissed*, 307 N.C. 580, 299 S.E. 2d 652 (1983). We hold that this motion was not fully disposed of until 25 August 1986 when defendant's records reached Columbus County. When a motion for change of venue is granted, the transfer of records between counties is a part of the disposition of the motion, and some delay is impossible to avoid. Therefore, we find no error in the denial of defendant's motion to dismiss.

[2] Defendant next assigns as error three instances where Carthens was allowed to testify, over objection, as to Carthens' own willingness to participate in the robbery. Defense counsel objected three times to Carthens' testimony concerning Carthens' conversation with Greg Colvin about robbing the bank. Defendant contends that these statements were inadmissible in his trial because they did not establish a conspiracy between Carthens and defendant, but only between Carthens and Greg Colvin. Defendant also argues that there is no evidence that the statements about robbing the bank were directed to defendant or were stated in his presence. We find no merit in defendant's argument.

The State may "offer the acts or declarations of a conspirator before the *prima facie* case of conspiracy is sufficiently established. Of course, the prosecution must properly prove the existence of the *prima facie* case of conspiracy before the close of the State's evidence in order to have the benefit of these declarations and acts." *State v. Polk*, 309 N.C. 559, 566, 308 S.E. 2d 296, 299 (1983). The State in this case sufficiently established the elements of a conspiracy and defendant's involvement in it subsequent to Carthens' testimony. The evidence presented by the State taken in the light most favorable to the State, showed that defendant was present when Carthens and Greg Colvin discussed robbing the bank, that he agreed to help, and that he engaged in elaborate preparations to rob the bank. Therefore, there was no error in allowing Carthens' testimony.

[3] Next, defendant argues that the trial court erred in allowing Carthens to testify concerning defendant's agreement to participate in the robbery. As to defendant's agreement to participate, Carthens testified as follows:

> Q. Did you have a conversation with Sam there at the house?
>
> A. Well, he ain't said that much, but he said he was gonna do it.
>
> Q. What did Sam say?
>
> A. He said he was gonna do it, help his brother out.
>
>     . . . .
>
> Q. What, if anything, was your understanding as to what was to be done when Sam said that he would "do it"?
>
> Mr. Wood: Objection.
>
> The Court: Overruled.
>
> The Witness: Go to Tarheel Bank and rob it.

Defendant argues that Carthens' testimony concerning defendant's intent when he said he was going to "do it" was inadmissible as an improper conclusion by Carthens. We find this argument meritless.

N.C. Gen. Stat. § 8C-1, Rule 701, allows opinions by lay witnesses which are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." We hold that Carthens' statement meets the requirements of Rule 701 and there was no error in allowing this statement. Furthermore, if there was any error, it was not prejudicial because there was ample other evidence to prove defendant's involvement in the conspiracy.

[4] Defendant next argues that the trial court erred in overruling defense counsel's objection to the introduction of a letter concerning Carthens' plea arrangement with the State. Defendant argues that the letter was self-serving, misleading, and contained conclusory statements. We find no error.

N.C. Gen. Stat. § 15A-1055(a) provides that "any party may examine a witness testifying under . . . an arrangement under G.S. 15A-1054 [charge reductions or sentence concessions in consideration of truthful testimony] with respect to that . . . arrangement. A party may also introduce evidence . . . in corroboration or contradiction of testimony or evidence previously elicited . . . concerning the . . . arrangement." This section is "aimed at ensuring that the jury be made aware that the witness is testifying under a grant of immunity or some other arrangement." *State v. Morgan*, 60 N.C. App. 614, 617, 299 S.E. 2d 823, 826 (1983).

In the case below, it was defense counsel who initially introduced evidence of Carthens' plea arrangement with the State. In addition, the contents of the letter were relevant to defendant's case and in no way prejudiced him. The letter merely informed the jury of Carthens' plea arrangement with the State and his interest in testifying against defendant. We find no error in the admission of this letter.

[5] Defendant next argues that the trial court erred in denying his motion to dismiss the conspiracy charge for insufficiency of the evidence. We find no error.

On a motion to dismiss the evidence must be considered in the light most favorable to the State, and the State must be given the benefit of every reasonable inference to be drawn therefrom. *State v. Cutler*, 271 N.C. 379, 156 S.E. 2d 679 (1967). "The test of the sufficiency of the evidence to withstand such a motion is the same whether the evidence is circumstantial, direct, or both." *Id.* at 383, 156 S.E. 2d at 682.

A criminal conspiracy is an agreement between two or more persons to do an unlawful act or to do a lawful act in an unlawful way or by unlawful means. *State v. Bindyke*, 288 N.C. 608, 220 S.E. 2d 521 (1975). To constitute a conspiracy it is not necessary that the parties should have come together and agreed in express terms to unite for a common object; rather, a mutual, implied understanding is sufficient, so far as the combination or conspiracy is concerned, to constitute the offense. . . . The existence of a conspiracy may be established by direct or circumstantial evidence. "Direct proof of the charge [conspiracy] is not essential, for such is rarely ob-

tainable. It may be, and generally is, established by a number of indefinite acts, each of which, standing alone, might have little weight, but, taken collectively, they point unerringly to the existence of a conspiracy. . . ." *State v. Whiteside*, 204 N.C. 710, 169 S.E. 711 (1933).

*State v. Abernathy*, 295 N.C. 147, 164-65, 244 S.E. 2d 373, 384 (1978).

In this case, there was ample evidence of defendant's involvement in the conspiracy to withstand the motion to dismiss. The only direct evidence of defendant's guilt is Carthens' testimony that defendant said "he was gonna do it, help his brother out," which defendant contends is inadmissible. We have found that evidence to be admissible. In addition, there is enough circumstantial evidence to create an inference of defendant's guilt sufficient to withstand his motion to dismiss. The evidence shows that defendant accepted from his brother a jumpsuit, mask, gloves, and sawed-off shotgun for use in the robbery. He also rode with his brother and Carthens to Tarheel, where he and Carthens got out and broke into a house behind the bank. While in the house he and Carthens changed into the clothes provided by Greg Colvin and waited there for a signal from him before entering the bank. Defendant's participation in these elaborate preparations for the robbery are sufficient alone to prove defendant's guilt. Therefore, we find no error in the trial court's denial of the motion to dismiss.

**[6]** Finally, defendant argues that the trial court erred in not finding defendant's limited mental capacity as a mitigating factor. We find no error.

Defendant submitted a psychiatric history/evaluation from Dorothea Dix Hospital which stated that defendant was "in the low borderline range of intellectual functioning" and a letter from a psychiatrist which stated that defendant "is functioning in the Borderline range of intellectual ability." On the basis of this evidence, defendant requested that the trial judge find his limited mental capacity as a mitigating factor under N.C. Gen. Stat. § 15A-1340.4(a)(2), which states:

(2) Mitigating factors:

     e. The defendant's immaturity or his limited mental capacity at the time of commission of the offense significantly reduced his culpability for the offense.

To find a defendant's limited mental capacity as a mitigating factor, the statute requires that it significantly reduce the culpability for the offense. Although the reports submitted by defendant did establish his borderline intelligence, there was no evidence that defendant was unable to understand the consequences of his behavior so as to significantly reduce his culpability for the offense. Therefore, we find no error in the trial court's failure to find defendant's limited mental capacity as a mitigating factor.

Based on the foregoing, we hold that defendant received a fair trial, free of prejudicial error.

No error.

Judges EAGLES and SMITH concur.